[Civ. No. 5829.   Third Appellate District.—July 2, 1937.]

R. J. DEESE et al., Appellants, v. CITY OF LODI (a Municipal Corporation) et al., Respondents.

632

J. LeRoy Johnson and L. A. Mills for Appellants.

Glenn West, City Attorney, for Respondents.

PLUMMER, J.—The plaintiffs began this action seeking an injunction restraining the defendants from enforcing a certain ordinance of the City of Lodi known as Ordinance No. 220, entitled, "An Ordinance Safeguarding the public health of the Inhabitants of the City of Lodi by regulating the hours of certain business within said City."

The plaintiffs are engaged in the business of conducting a grocery store within the premises of a certain building known as and called the Lodi Public Market; that in the conduct of their business and for the convenience of their patrons, it is alleged to be necessary for the proprietors of said business to open their store and keep the same open daily between the hours of 7:00 o'clock A. M. and 10:00 o'clock P. M.

It is further alleged that the defendants threaten to enforce the provisions of Ordinance No. 220, and that the enforcement of said ordinance will entail loss of business and seriously interfere with their property rights. It is further

alleged that said ordinance is void in that it is discriminatory and also interferes with their personal and property rights guaranteed by the Constitution of the state of California and the Constitution of the United States.

To this complaint the defendants interposed a demurrer, and upon hearing thereof the trial court sustained the same without leave to amend. Judgment was thereupon entered that the plaintiffs take nothing by reason of their action. From this judgment the plaintiffs appeal.

Ordinance No. 220 of the City of Lodi, so far as challenged herein, reads as follows:

"The City Council of the City of Lodi does ordain as follows:

"Section 1. It shall be unlawful for any person, firm or corporation or association within the corporate limits of the City of Lodi, to keep open any store, work shop, banking house, grocery store, butcher shop, meat market, fruit or vegetable market, or other place of business, or to transact therein any business during such time as the same are herein required to be kept closed.

"Section 2. All such places of business are hereby required to be kept closed and to transact no business during all of 'the daytime of either Saturday or Sunday (as the owner or proprietor thereof may select) of each week, and also on Memorial Day, Independence Day, Labor Day, Armistice Day, Thanksgiving Day, Christmas Day and New Years Day.'

"Section 3. All such places of business shall be kept closed and shall transact no business from and after seven o'clock in the afternoon of each day and until six o'clock in the forenoon of the following day.

"Section 4. If the owner or proprietor of such a business elects to keep such business closed during the daytime on a Saturday of any week, such business may lawfully be run after sun-down and up to nine o'clock in the afternoon of such Saturday and from six o'clock in the forenoon to seven o'clock in the afternoon of the following Sunday.

"Section 5. If the owner or proprietor of such a business elects to keep such business closed during the daytime on a Sunday of any week, such business may lawfully be run from six o'clock in the forenoon to nine o'clock in the afternoon of the preceding day.

"Section 6. Nothing herein contained shall prohibit anyone from conducting any such a business from six o'clock in

the morning to nine o'clock in the evening upon any day preceding a holiday, unless such preceding day be a Saturday or Sunday during the daytime of which such business is herein required to be kept closed.

"Section 7. This ordinance is passed and adopted for the purpose of proving for adequate rest and recreation for persons working or to work or engaged or to engage in the operation of such businesses, for the purpose of insuring the adequate inspection, cleanliness and orderliness of such places of business and of the articles sold therein and for the purpose of promoting the public health of said city.

"Section 8. The provisions of this ordinance shall not apply to any person, firm, corporation or association, conducting or to conduct a *bona fide* hotel, cigar or tobacco store, boarding house, lodging house, restaurant, bakery, livery stable, retail drug store, confectionery store, ice cream parlor, garage, automobile service station, transfer business, railroad, telephone, telegraph or express office, dry or green fruit packing house, newspaper or periodical agency, dance hall, tavern, a place where liquid beverages or refreshments are sold, pool or billiard hall, skating rink, ice business, manufacturing establishments, baseball games, sporting contests, theatre or other place of amusement.''

The City of Lodi is a city of the sixth class, and the business conducted by the plaintiffs is conducted within the corporate limits thereof.

The constitutional provisions alleged to be violated by the ordinance referred to are:

1st. Section 1 of article I, which guarantees to all people certain inalienable rights, among which is set forth the right to acquire, possess and protect property;

2d. Section 21 of article I, which specifies that no special privileges or immunities shall be granted, etc., nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens;

3d. Section 25 of article IV prohibiting the legislature from passing local or special laws or granting to any corporation or association or individual special or exclusive rights:

4th. Also, the fifth amendment of the Federal Constitution, which prohibits anyone from being deprived of liberty or property without due process of law;

5th. Also, the Fourteenth Amendment of the Federal Constitution, which prohibits anyone from being deprived of liberty or property without due process of law, and which also provides that no one shall be denied equal protection under the laws.

Ordinance No. 220 of the City of Lodi appears to be fashioned somewhat after, and partly based upon an ordinance adopted by the city of Fowler, a town of the sixth class, the first section of which reads: "That it shall be unlawful for any person, firm, corporation or association to keep open within the corporate limits of the town of Fowler, upon, or on any Sunday, any store, workshop, banking-house or other place of business, or any public dance-hall, pool or billiard-hall, skating rink, theatre, or any place of public amusement. (*In re Sumida*, 177 Cal. 388 [170 Pac. 823].) Certain exceptions to the closing ordinance of the city of Fowler are set forth in section 3 and include fourteen in number. In section 8 of the Lodi ordinance the exceptions include thirty different kinds of business.

The ordinance of the city of Fowler purports to be simply a Sunday closing ordinance. The title of the Fowler ordinance establishes that its purpose was to provide a day of rest one day in the week for those persons pursuing occupations forbidden to be carried on upon Sunday. Section 7 of the Lodi ordinance purports to express the purpose of its adoption, in that it is intended to give one day of rest and recreation to persons working or to work in the operation of the prohibited businesses, and for the purpose of insuring adequate inspection, cleanliness and orderliness of such places of business, and of the articles sold therein, and for the purpose of promoting the public health of said city.

There is another distinction between the Fowler ordinance and section 2 of the Lodi ordinance which leaves the Lodi ordinance uncertain and indefinite as to its application to the particular time of the day called Sunday when the ordinance is effective. That section reads: "All such places of business are hereby required to be kept closed and to transact no business during all of the daytime of either Saturday or Sunday." The ordinance contains no limitation of hours included within the expression "daytime". By a reference to 17 Corpus Juris, page 1134, as to the different definitions of "daytime" given by the different cases, this

indefiniteness and uncertainty appears. The text reads: "That portion of the twenty-four hours in which a man's presence and countenance are distinguishable; daylight enough to discern a man's face; a time when there is light enough to distinguish a man's features; the time from the rising to the setting of the sun, and that portion of the time after the setting of the sun, or before its rising, during which there is sufficient natural light, other than moonlight, so that the countenance of man may be distinguished; any time of the twenty-four hours from thirty minutes before sunrise until thirty minutes after sunset."

Section 3 of the Lodi ordinance, if valid, does not cure the uncertainty or indefiniteness of the application of section 2.

Section 4 of the ordinance is likewise a variable quantity, as it provides that if the owner or proprietor of a business elects to keep his store closed during the daytime on Saturday, he may open and run the same after sundown and up to 9:00 o'clock of such Saturday. In summertime, and especially during the month of June, the geographical location of Lodi gives it sunlight until about 7:30 P. M., while during the month of December there are days when the sun will have set at about 4:30 P. M. Thus, the storekeeper who closes his business during the daytime on a Saturday may nevertheless keep the same open during the month of December for a period of 4½ hours, which works a decided discriminatory advantage, in that the hours mentioned cover the period of time when grocery stores transact a greater portion of the day's business.

In this discussion we do not question the right of a city council to pass a general Sunday closing law; nor can we question the motives of the legislative body in passing such an ordinance; but if such ordinance is discriminatory on its face, irrespective of the purpose for which the ordinance is passed, such ordinance must be declared invalid. As said in the case of *In re Sumida, supra*: "It is a proposition too well settled to require discussion or authority in support of it that legislation which applies generally to all persons within the territory to which the legislative power extends, who come within the classification of the law, is not special legislation within the meaning of section 25 of Article IV, provided the classification is one which is allowable under Section 21." Thus, if the ordinance in question applies to all persons conducting a business which comes reasonably within the same

classification, it will be upheld, but if it excepts any particular business which comes within the same reasonable classification, it must be held discriminatory.

■ While the argument in the briefs in this case has circled around the provisions of the Fowler ordinance, it may be stated that in addition to the dissimilarity of the two ordinances and the purposes for which they are declared to have been adopted, the Lodi ordinance, in exceptions, goes a long ways beyond the Fowler ordinance. Among these additional exceptions we may schedule the following: Tobacco stores, automobile service stations, dancehalls, taverns, places where liquid beverages are sold, pool or billiard-halls, skating rinks, ice business, manufacturing establishments, baseball games, sporting contests, theatres, and other places of amusement. What these other places of amusement may be that come within the excepted classes, the ordinance does not particularize. The point is made by the respondents that the sale of liquid beverages, if it includes houses or places of business conducted under various euphemistic names, but which are in fact saloons, are regulated solely by authority of the state, and therefore, as to such places, the exception in the Lodi ordinance is meaningless. All of this may be true, but just how the conduct of a grocery store in the City of Lodi is more inimical to the cleanliness, orderliness and public health of the City of Lodi than such a beverage establishment, is difficult to perceive.

Again, what logical distinction is there between a tobacco store and a grocery store which gives to the tobacco store a higher status as to cleanliness, orderliness and public health than a grocery store? Is the nicotine and smoke-laden atmosphere of a tobacco store more salubrious, more promotive of public health than the atmosphere of a grocery store containing peaches, apricots, grapes, watermelons and other like products grown in the vicinity of Lodi? Again, we may ask: Is there any logical reason why one may be allowed to buy or sell a plug of tobacco at a tobacco store on Sunday and be denied the same privilege with relation to a roll of butter on Sunday in a grocery store? Is there any logical reason why one should be allowed to buy or sell a package of cigarettes at a tobacco store and be denied the same privilege of obtaining a bottle of milk at a grocery store? Again, is there any logical reason why one should be allowed to have

the gasoline tank of his car filled on Sunday and denied the privilege of taking home a dozen eggs?

It may be argued that the keeping open of automobile service stations is to aid the weekly hegira to the hills, and thus gain physical vigor in a few hours respite from the environments of the City of Lodi. But it cannot be argued that the departure of such automobile-minded citizens adds to the cleanliness, orderliness or public health of the city. Nor is there any logical reason why an automobile owner should not be required to see that the gasoline tank of his car is filled on Saturday, just as a patron of a grocery store is sought by the ordinance to be compelled to buy everything that he needs on Sunday before the closing hour of the Saturday preceding.

We think it unquestionable that the closing of grocery stores and fruit-stands on Sunday, and the leaving open, without any limitation of hours and without any limitation of days, of dance-halls, billiard-halls, skating-rinks, baseball games, sporting contests, theatres, and other places of amusement is not only discriminatory, but such provisions do not and cannot logically be held to promote cleanliness, orderliness and public health above the status occupied by grocery stores and fruit-stands. We may add what we know is common knowledge, that such excepted places are the very places where acts of disorderliness do occur, are expected to occur, and are of common occurrence, whereas, practically nothing of the kind ever does occur in a grocery store.

The respondent calls our attention to the language of the Supreme Court in the Sumida case, *supra,* relative to ice cream parlors being included in the excepted class in the Fowler ordinance, the reason being given that Fowler is situate in such a hot climate that the cooling effect of ice cream has become a necessity in that city, and upon that basis respondent argues that tobacco stores have become necessary in the City of Lodi, and that the soothing and quieting effect of a cigarette or a pipe of tobacco is promotive of the peace and security of the citizens of Lodi. No reason is given, however, why the plug of tobacco or the package of cigarettes might not be purchased on a Saturday and not on a Sunday. Ice cream, on the other hand, has a very strong tendency to melt in a hot climate, and therefore cannot be carried over from Saturday to the following Sunday with any degree of success.

██ So far as one day's rest every week is concerned, that is amply provided for by the Statutes of 1893, page 54, and therefore does not need the supporting influence of Ordinance No. 220 of the City of Lodi.

In view of what we have stated it seems to us unquestionable that Ordinance No. 220, *supra,* has no relation whatever to what are usually called "Sunday Closing Ordinances", having for their purpose the promotion of morals or what is usually called "Sunday Observance". In other words, the Lodi ordinance has neither morals, Christian observance of Sunday, public health, welfare or safety to support it, in that it specially excludes a long line of occupations, businesses, or whatever they may be called where everything contrary to good morals, Christian observance of Sunday, safety or public welfare may be found.

The language found in the case of *Olds* v. *Klotz,* 131 Ohio St. 447 [3 N. E. (2d) 371], used by the Supreme Court of Ohio in considering a closing ordinance, is so pertinent that we copy therefrom the following, excluding what is said as to nonessentials:

"On the contrary, places for distribution of foodstuffs are wholly necessary in order to furnish daily nourishment to the masses of our people. Wisely, laws have been enacted to assure the purity and wholesomeness of food; but the limitation of hours that products of that kind may be sold by retail to the public seems to be of minor consideration in relation to the public health in comparison with the necessity of having food available at the time it may be required to supply pressing human want. Food is vital to health, and even to life itself. Its need for nourishment to sick and well, to adult and child, is quite as pressing a consideration from a health standpoint, as that which requires that food be retailed in stores under conditions which are consonant with proper requirements of sanitation. All the authorities seem to be in accord with the proposition that the police power does not extend to the limitation of hours within which retail stores, selling either groceries or other commodities or both, may be kept open to customers. Every business has some relation to the general welfare, because there is none which is operated to supply consumers generally that does not have some public aspect; but the regulation thereof is not within the police power unless the relation to the public interest and the common good is substantial and the terms

of the law or ordinance are reasonable and not arbitrary in character.''

While the exercise of the police power is inherent in government and essential to its existence, it cannot be so used as to arbitrarily limit the rights of one class of people, and allow those same rights and privileges to a different class, where the public welfare does not demand or justify such a classification. As we have pointed out, there is nothing in the Lodi ordinance which either demands or justifies the arbitrary classifications set forth therein.

In *Kislingbury* v. *Treasurer of City of Plainfield*, 10 N. J. Misc. 789 [160 Atl. 654], a Sunday closing ordinance containing an exception providing that it should not apply to those who observed Saturday as the Sabbath if their business did not disturb the observance of Sunday as a Sabbath by others, was held discriminatory. The discriminatory provision allowed full disturbance by those conducting business on Saturday and observing Sunday, but denied the privilege to those who observed Saturday as their Sunday. That case uses the following language in relation to the police power: ''But this does not justify a legislative enactment which discriminates where there is no basis for discrimination.''

Beginning with the case of *Ex parte Jentzsch,* 112 Cal. 468 [44 Pac. 803, 32 L. R. A. 664], the courts of this state have consistently frowned upon the attempt to make arbitrary classifications in limiting the days and the hours when one might engage in legitimate occupations.

In the case of *In re Boehme,* 12 Cal. App. (2d) 424 [55 Pac. (2d) 559], the court refused to uphold a barber shop law on the ground that one day of rest in seven was necessary for the good health of the community where it appeared; that that was not the real purpose of the law. The Boehme case refers to the Sumida case, and distinguishes the two cases somewhat as we have endeavored to distinguish the Sumida case from the case at bar.

In the case of *Ganley* v. *Claeys,* 2 Cal. (2d) 266 [40 Pac. (2d) 817], several California cases relating to closing ordinances are considered, and it is there shown that there can be no arbitrary classification or unnecessary restraint imposed upon one class to the exclusion of another class, where there is no logical distinction between the two in so far as the public health, morals, safety, etc., of the community may be affected.

The latest case called to our attention is that of *In re Scaranino,* 7 Cal. (2d) 309 [60 Pac. (2d) 288], where it is said that an arbitrary classification requiring a barber shop to be closed at least one day every calendar week is violative of both the state and federal Constitutions and constitutes special legislation. While that case had to do only with the classification of one particular line of business, the language used in the opinion of the court is applicable here, and supports our contention that there can be no classification made which applies its prohibitory provisions to a certain line of business and gives free rein to another line of business which is either logically within the same classification or manifestly more subversive of the morals, cleanliness, orderliness or public health of the citizens of the community affected by the legislation.

We do not see any escape from the foregoing that Ordinance No. 220 of the City of Lodi is not an ordinance calculated to promote the public health, morals, safety, welfare, cleanliness or orderliness, much less the Christian observance as the day of rest of any particular day, and is arbitrary in its classifications and discriminatory in its attempted application, and is therefore void.

The judgment is reversed, with directions to the trial court to grant the prayer of the plaintiffs' complaint.

Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 31, 1937, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 26, 1937.