[L. A. No. 16060. In Bank.—November 14, 1938.]

JUSTESEN'S FOOD STORES, INC. (a Corporation), Appellant, v. CITY OF TULARE (a Municipal Corporation) et al., Respondents.

Hugo McKinley and Joseph A. Brown for Appellant.

Breed, Burpee & Robinson, as *Amici Curiae,* on Behalf of Appellant.

Israel H. Ham, City Attorney, for Respondents.

Orrick, Dahlquist, Neff & Herrington, as *Amici Curiae,* on Behalf of Respondents.

THE COURT.—The question involved in this action concerns the validity of an ordinance of the City of Tulare prohibiting stores and establishments (with certain exceptions) dealing in foods for human consumption from remaining open for business between designated hours and on Sundays or holidays, and from receiving, selling or distributing such foods in any manner during the proscribed hours and periods.

Plaintiff, who for a number of years has conducted a general grocery store in the City of Tulare, brought this action in the Superior Court of Tulare County to have declared unconstitutional and to enjoin the enforcement of an ordinance of that city "creating the office of Municipal Meat and Food Inspector and a Municipal Meat and Food Inspection Department, providing for the inspection of uncured or uncooked meats and other foods and for the condemnation and destruction of the same when found unwholesome or deleterious as food; fixing the hours of duty of the Inspector and of the Inspection Department, establishing opening and closing hours for places of business selling uncured or uncooked meats or any other foods, making a violation hereof a misdemeanor, and prescribing a penalty therefor". A demurrer, which was general and special, to plaintiff's complaint was sustained without leave to amend, the temporary re-

straining order theretofore issued was discharged, and the action was dismissed. Plaintiff appeals, contending that the ordinance, and particularly sections 7 and 8 thereof, are in derogation of the Constitutions of the United States and of the state of California, in that they deprive plaintiff of its liberty and property without due process of law, and deny to it the equal protection of the laws; and, furthermore, that the ordinance is based on a classification that is unconstitutional, arbitrary and unreasonable.

Section 2 of the ordinance declares that "the public health, convenience and general welfare of the people of the City of Tulare require that markets, establishments, stores, and places of business dealing in, distributing, offering for sale, selling or in any manner handling food of any kind and of every kind intended for human consumption, be regulated". Sections 3 to 6, inclusive, provide, respectively, for the creation of the office of municipal meat and food inspector of the city, for the creation of the office of the meat and food inspection department and designates the members thereof, the powers and duties of the inspector, and the hours of duty of such inspector and the inspection department. Sections 7 and 8, which are particularly challenged by appellant, read as follows:

"Section 7. It shall be unlawful for any person, firm, association or corporation, maintaining, or that may hereafter maintain, a place of business, store or establishment in the City of Tulare, engaging in the business of selling, offering for sale, distributing, or in any way or manner disposing of any uncured or uncooked meats or other foods of any kind intended for human consumption, to keep any place of business or establishment open for the transaction of business to any extent whatever, or permit such place to be kept open for business, or to receive at such place of business any uncured or uncooked meats or other foods of any kind intended for human consumption, except between the hours heretofore established for the hours of duty of the Municipal Meat and Food Inspector and the Municipal Meat and Food Inspection Department, or to have open any such place of business where any uncured or uncooked meats or other foods of any kind intended for human consumption are handled, sold or distributed, for transaction of business, or for selling or in any manner whatever distributing, any uncured or

uncooked meats or other foods on any holiday or on any Sunday, or between the hours of 9 o'clock p. m. on every Saturday and 7 o'clock a. m. on every Monday.

"Section 8. The provisions of this Ordinance shall not apply to persons, firms, associations or corporations, engaged in operating *bona fide* hotels, boarding houses, lodging houses, restaurants, drug stores, confectionery stores, dispensers of beverages, distributors of milk and cream, ice cream and soda fountains, provided that in case one or more of the excepted businesses is carried on in the same room with any business coming within the provisions of this Ordinance and thereby required to be kept closed on Sundays and certain hours of other days, the part of the room in which said excepted business is carried on shall be separated and set apart from the said business coming under the operations of this Ordinance, by a permanent partition, without opening, not less than five feet in height, and said permanent partition shall enclose and separate said place where said excepted business is carried on, from the remaining part of the room or space where the business coming under the operation of this Ordinance is operated."

Section 11 declares the ordinance to be an emergency measure "designed to protect the public health", the reasons for the emergency being that foods "intended for human consumption are being sold and distributed in the City of Tulare which are unfit, unwholesome, deleterious and injurious, and that the public health requires immediate supervision and inspection of the same".

There is, and can be, no denial by appellant of the right of the City of Tulare to insure protection of the public health against the manufacture and sale of unwholesome foods, and to that end to regulate certain occupations; but such regulation of a lawful business must be reasonable. The test of the reasonableness of a measure involves a determination as to whether it is for the benefit of the community in general, that is, for the public health and general welfare, and whether the means adopted to produce the public benefit are "reasonably necessary to accomplish that purpose and not unduly oppressive upon individuals". (*In re Miller,* 162 Cal. 687, 694 [124 Pac. 427].) Appellant freely concedes, as indeed it must, that if the sole purpose of the ordinance was to control the sale of uncooked and uncured meats, and

it was intended by the law to regulate the opening and closing only of markets dealing in such products on Sundays and holidays, it could have no objection to the measure. (See *In re Sumida*, 177 Cal. 388 [170 Pac. 823].) ▮ The conduct of meat markets has always been the subject of regulation under the police power of the state or a municipality. (*In re Lowenthal*, 92 Cal. App. 200 [267 Pac. 886].) A city has full power, under the Constitution (art. XI, sec. 11), to adopt and enforce laws having for their object the protection and preservation of the health of the people.

▮ Appellant asserts that an examination of the ordinance will disclose that it is an attempt to close grocery stores under the guise of a health measure. The motive of a city council in passing an ordinance designed to safeguard the public health cannot be questioned; but, if the ordinance is discriminatory, irrespective of the purpose for which it is passed, it must be declared invalid. If it "applies to all persons conducting a business which comes reasonably within the same classification, it will be upheld, but if it excepts any particular business which comes within the same reasonable classification, it must be held discriminatory". (*Deese et al.* v. *City of Lodi*, 21 Cal. App. (2d) 631 [69 Pac. (2d) 1005].)

▮ Respondents submit that the Tulare ordinance is directed in its entirety to the subject of health, and that a relation to the public health gives it a character distinguishing it from other ordinances hereinafter referred to. They further state that there is a well-founded distinction in the ordinance between those businesses which are allowed to keep open and those required to remain closed during certain hours. The ordinance under consideration prohibits the receiving and selling during stated periods, not alone of uncured and uncooked meats, but of *"other foods of any kind* intended for human consumption", by all establishments other than those designated. Among the latter exceptions are boarding houses, restaurants, dispensers of beverages and confectionery stores. Manifestly, so far as the serving of food to their patrons is concerned, these excepted establishments are permitted, without restriction, to distribute and deal in the very products which the ordinance prohibits grocery stores from handling in any manner, during the fixed periods, thus arbitrarily imposing burdensome condi-

tions upon a selected class of merchants. In fact, *amici curiae* on behalf of respondents admit that "interpreting section 7 of the ordinance in the light of the exceptions of section 8 thereof, it would appear that the ordinance was designed primarily to regulate establishments handling groceries and meats." ■ We do not perceive by what process of reasoning the conclusion is reached that restaurants, confectioneries, dispensers of beverages, and the other excepted businesses dealing in food for human consumption, should be free from inspection on nights, Sundays and holidays, while grocery stores, in the interests of health, require such inspection. Can it be said that food products are more dangerous to health when sold in a grocery store than when sold, for example, in a restaurant or confectionery store? From the standpoint of health, what distinction is there between selling food to customers for consumption on the premises and selling it to customers to be taken to their homes? Or, why should a bottle of milk left on a doorstep by a dairy delivery company be deemed more sanitary or less subject to contaminating influences than a similar bottle sold over the counter of a grocery store? In discussing the reasonableness of a classification excepting from the provisions of a closing ordinance, among other businesses, "a place where liquid beverages or refreshments are sold" and cigar and tobacco stores, the District Court of Appeal, in *Deese et al.* v. *City of Lodi, supra,* at page 627, said: " . . . just how the conduct of a grocery store in the City of Lodi is more inimical to the cleanliness, orderliness and public health of the City of Lodi than such a beverage establishment, is difficult to perceive. Again, what logical distinction is there between a tobacco store and a grocery store which gives to the tobacco store a higher status as to cleanliness, orderliness and public health than a grocery store? Is the nicotine and smoke-laden atmosphere of a tobacco store more salubrious, more promotive of public health than the atmosphere of a grocery store containing peaches, apricots, grapes, watermelons and other like products grown in the vicinity of Lodi?" Respondents and *amici curiae* assert that the Tulare ordinance is entirely a health and sanitation law, essentially different from the ordinance under consideration in the Lodi case which, they state, "makes no reference to public health" except in one section. With that statement we are not en-

tirely in accord. The title of the Lodi ordinance expressly declared that it was "An Ordinance safeguarding the public health of the inhabitants of the City of Lodi by regulating the hours of certain business within said City." We are of the view that the observations of Mr. Justice Plummer in the case of *Deese et al.* v. *City of Lodi, supra,* above quoted, apply with equal force to the ordinance in the present case, and that, as a "health measure", it is unreasonable and arbitrary. ■ If its provisions related only to food susceptible to quick spoilage, including meats, uncooked and uncured, there could be no question as to its validity as a health-promoting law; but, in extending its operation to include "other food of all kinds", including bottled, packaged and canned products, the ordinance clearly oversteps the bounds of reasonableness, so far as concerns the promotion and preservation of the public health, and resolves itself into a discriminatory closing law.

■ The real necessity for the passage of the ordinance in the present case would seem to arise from the fact that the hours of duty of the food inspector and the food inspection department do not extend to nights, Sundays or holidays. In the case of *Skaggs* v. *City of Oakland,* 6 Cal. (2d) 222 [57 Pac. (2d) 478], the question involved concerned the validity of an ordinance enacted by the Oakland city council making it unlawful for any person to deliver bakery goods in the city on Sundays and holidays and between certain hours. The plaintiff in that case contended that the delivery of bakery products differed in no way from the delivery of other food products, such as confectioneries, milk, butter, etc., which deliveries were permitted at any hour without restriction. This court held that the provision was not a valid exercise of the city's police power; that the restriction constituted an unwarranted and unreasonable interference with the carrying on of a lawful business, and was based upon an arbitrary classification, and therefore was invalid. In attempting to justify the ordinance, the respondents there urged that it was a reasonable health and sanitation regulation, and served a two-fold purpose, the first of which was that it restricted deliveries to reasonable times within which the food and sanitary inspectors employed by the city of Oakland could reasonably be expected to be on duty, thus enabling them to detect violations of health requirements and trace

to their source impure bakery goods. As to this argument, the court held (page 224) that ''it is not a valid exercise of police power to restrict unnecessarily a lawful occupation conducted in a reasonable manner, merely that it may accord with the convenience of inspectors''. That statement is particularly pertinent to the ordinance now before us.

In *Olds* v. *Klotz*, 131 Ohio St. 447 [3 N. E. (2d) 371], it was held that an ordinance limiting and fixing the hours per day during which a retail food and grocery establishment was permitted to keep open for business with the public was not a valid exercise of the police power, and was in contravention of the federal and state Constitutions. The ordinance there under consideration, after defining the term ''retail food and grocery establishment'', provided: ''Nothing contained herein shall be construed so as to apply to the selling of food in restaurants for consumption upon the premises, or the selling of confections including ice cream, or the selling of milk or its products by delivery from house to house upon regular routes.'' The court confined its consideration to the relation of the ordinance to the public health and general welfare. Its declarations are so applicable to the instant case that we quote at length from the opinion: '' . . . places for distribution of foodstuffs are wholly necessary in order to furnish daily nourishment to the masses of our people. Wisely, laws have been enacted to assure the purity and wholesomeness of food; but the limitation of hours that products of that kind may be sold by retail to the public seems to be of minor consideration in relation to the public health in comparison with the necessity of having food available at the time it may be required to supply pressing human want. Food is vital to health, and even to life itself. Its need for nourishment to sick and well, to adult and child, is quite as pressing a consideration from a health standpoint as that which requires that food be retailed in stores under conditions which are consonant with proper requirements of sanitation. . . . Every business has some relation to the general welfare, because there is none which is operated to supply consumers generally that does not have some public aspect; but the regulation thereof is not within the police power unless the relation to the public interest and the common good is substantial and the terms of the law or ordinance are reasonable and not arbitrary in character. The exercise

of the police power is inherent in government and essential to its existence and inevitably comes into conflict with the constitutional guaranties of the right of property and liberty of contract. In each case presented the court must draw the line of demarcation. Courts do not attempt to define police power with exactness, and inevitably the individual case must stand upon its own footing.

"This court cannot protect the rights of property and liberty of contract if it allows the passage of an ordinance of the character involved here."

Our attention has been directed to the recent case of *Allen* v. *City of Colorado Springs,* 101 Colo. 498 [75 Pac. (2d) 141] (rehearing denied January 10, 1938), involving an ordinance making it unlawful for any person to keep open any store for the sale of merchandise on Sundays, except when required by necessity, but exempting certain stores and establishments, including drug stores. It was held that, inasmuch as drug stores sold certain products similar to those usually carried by grocery stores, such as soaps, flavoring extracts, spices, etc., "the ordinance creates a condition whereby it was perfectly lawful for a retail drug store on Sunday to sell staple groceries, while the same ordinance at the same time prohibited the operator of a grocery store from selling these identical items", and was therefore invalid on the ground of unwarranted discrimination. While it is true this ordinance was passed to further the observance of the Christian Sabbath, and makes no reference to its being in the interests of public health, the discrimination referred to bears a close relation to the provisions of the ordinance passed by the city council of Tulare in the present case.

In view of what has already been said, we do not deem it necessary to pass upon other points raised by counsel on both sides. In our opinion, sections 7 and 8 of the ordinance of the City of Tulare here under consideration are based upon an arbitrary classification and constitute an unwarranted and unreasonable interference with the carrying on of a lawful business, and are therefore violative of the federal and state Constitutions in that they deprive appellant of its liberty and property without due process of law, and deny to it equal protection of the laws.

Nothing herein contained is intended to apply to other sections of the ordinance with reference to the creation

of the office of municipal meat and food inspector and of the meat and food inspection department of the City of Tulare and their powers to inspect. Such portions of the ordinance are clearly severable from sections 7 and 8, at which appellant's attack is directed, and which are herein held to be arbitrary and unreasonable in their classification.

■ Examination of the complaint discloses that the grounds of special demurrer were not well taken. We need not, therefore, concern ourselves with the rule announced in *Haddad* v. *McDowell*, 213 Cal. 690 [3 Pac. (2d) 550], and *Consolidated R. & P. Co.* v. *Scarborough*, 216 Cal. 698 [16 Pac. (2d) 268].

The judgment is reversed, with directions to the trial court to overrule the demurrer and permit the defendants to answer, if they be so advised.

CURTIS, J., Dissenting.—I dissent. I am in agreement with the decision of this case by the Fourth District Court of Appeal. That decision was based largely upon the conclusion reached by this court in the case of *In re Sumida,* 177 Cal. 388 [170 Pac. 823], written by former Chief Justice Shaw, in which an ordinance of the town of Fowler, containing provisions similar to those found in the Tulare ordinance was sustained. The decision in the case of *In re Sumida, supra,* has never been overruled, or even criticized by this court. The majority opinion merely calls attention to that decision but does not attempt to distinguish it from the present proceeding.