119 Cal.App.2d 674 (1953)
C. LEON deARYAN, Appellant,
v.
JOHN D. BUTLER, as Mayor of the City of San Diego, et al., Respondents.
Civ. No. 4527. 
California Court of Appeals. Fourth Dist. 
Aug. 13, 1953.
 C. Leon deAryan, in pro. per., for Appellant.
 J. F. Du Paul, City Attorney, Aaron W. Reese and Douglas D. Deaper, Deputy City Attorneys, for Respondents.
 GRIFFIN, J.
 Plaintiff and appellant individually, as taxpayer and elector, and in a claimed representative capacity, filed an action to enjoin the mayor, city council, and other city officials from adding a fluoride compound, in an amount sufficient to maintain one part of fluoride per one million parts of water to the water furnished to the consumers of water in the city of San Diego.
 The action arose out of the adoption of a resolution of the city council on October 30, 1951, as pleaded in the petition, reciting in part that:
 "Whereas, the San Diego County Medical Society, the San Diego County Dental Society, the Board of Directors and the Health Division of the Community Welfare Council, the Health Division of the Ninth District Congress of Parents and Teachers and the Public Health Commission of The City of San Diego have recommended to this Council that it will be directly in the interests of the health of the people of The City of San Diego to furnish to water consumers in said City water which has been treated by adding to its contents fluorides, and that this Council should endorse the principle of *677 artificial fluoridation with respect to the supplying of water to the people of The City of San Diego; and"
 "Whereas, this Council is of the opinion that such recommendation should be followed, and that it will be in the interests of the public health and the dental health of the residents of San Diego and the water consumers of said City to treat the water served to consumers within said City by adding to it an approved fluoride compound ...; Now, Therefore,"
 "Be It Resolved ..."
 "That the City Manager be, and he is hereby authorized and directed to apply to the State Board of Health for an amendment of the water permit of said City to allow said City" so to do.
 A temporary restraining order was issued. At the hearing it was stipulated that such a resolution, as worded, was adopted after receiving testimony "that the fluoridation of water will primarily act as a caries- preventive on children up to about the age of twelve years, and that said Resolution ... was adopted by the Council primarily in the interest of the public health of said children up to about the twelfth year of age; ... that pursuant to said resolution ... City Manager ... did apply for and receive from the State of California Department of Public Health, pursuant to sections 4011-4038, inclusive, of the California Health and Safety Code, a permit to add fluoride compounds to all the water being served in The City of San Diego."
 Thereafter, plaintiff offered certain exhibits and reports in evidence and produced certain witnesses who testified generally concerning the artificial fluoridation of water intended for human consumption, and as to its probable beneficial or detrimental effects in so using it.
 The sanitary engineer for the city water department (appearing in his individual capacity) testified that although he was not qualified to testify as to the actual biochemistry of fluorides in the human body, he did know there were "two sides" to the question as to the detrimental or beneficial effect of fluoridation of water for human consumption. His study was based on such reports as those of the National Research Council, Division of Medical Sciences, pertaining to the Ad Hoc Committee on Fluoridation of Water Supplies, which commission was headed by Dr. Kenneth S. Maxcy, of Johns Hopkins University. He pointed out from the conclusions of that report, with which he said he agreed, that "The upper *678 level of safety has been reached in the northern part of the United States in domestic water supplies containing approximately 1.0 to 1.5 p.p.m. fluorine, in the southern part of the country approximately 0.7 p.p.m."; and that in his opinion the city of San Diego, "climatically would be in the lowest tolerance group in the United States"; that of its 375,000 inhabitants now being served by the city water department, about 25 per cent are of the age 12 years or under; that the cost of the equipment and to run the contemplated program provided in the ordinance for the first six months would be $35,000, and in the subsequent years this would cost about $35,000 per year; that only about one-half of one per cent of the public water supply output is used for cooking and drinking; that if one starts out with one part per million concentration and boils another one-half of it away he will end up with two parts per million, and if he boils one-half away he will end up with four parts per million; that in such cases, although not necessarily dangerous "could possibly," or would probably, cause parents of children some concern and "perhaps involve the City," and that "moderate fluorosis is a probability."
 Another witness testified that he operated a health food store and had studied nutrition for over 20 years; that he had studied pamphlets prepared by universities, doctors and chemists on the subject, and that they state that "sodium fluoride, such as used in our drinking water, is a toxic and poisonous chemical," and that fluoridation of water harms the human system more than it helps it.
 Another witness, a graduate of West Coast Chiropractic College, testified he made a study of chemistry there; that he agreed with Taber's Cyclopedic Medical Dictionary defining sodium fluoride, as being a manufactured product, a "White crystalline powder, saline in taste ... Action and Uses: Epilepsy, tuberculosis, and malaria ... Commercially, in etching glassware, for eradication of rats, insects, ants, and other pests, or as a food preservative"; that in his opinion it would not help in building up children's teeth; that when it came in contact with the stomach juices it would turn into hydrochloric acid, a substance used to etch glass; and that in his opinion it would, as to a certain class of people, have a cumulative effect and would injure organs of the human body. He admitted that current surveys made by the United States Public Health Service indicate a great difference of opinion as to the cumulative effect on the organs and as to *679 what concentrations are necessary to produce the effects above noted; that a San Diego County Medical Society bulletin indicates that more than 140 cities have adopted fluoridation of water supplies; that it states that the councils are unaware of any evidence that fluoridation of water supplies, up to a concentration of one part per million, would lead to structural damage in the bones; that the only difficulty so far revealed is the possible increase in the mottling of the teeth enamel, but the use of it is safe. He did not agree in toto with them. He stated that he heard some of the arguments, pro and con, at a hearing before the city council on the advisability of adopting the plan, but did not participate in the arguments.
 Several dissertations by so-called experts on the subject, which involved tests claimed to have been made, were admitted in evidence, which reports resulted in the conclusion that sodium fluoride has a cumulative effect on the human body, and is harmful to anyone's teeth, regardless of his age, and that the fluorine content of the water supply should never be more than one- half part per million. These opinions were published in 1945, 1946, and 1949.
 Petitioner offered in evidence a copy of a proposed bill to the state Legislature which in substance specifically authorized public and private utilities to treat water intended for public consumption and to introduce into it fluorine, if done under a permit in connection therewith. It also provided for exemption to municipalities, etc., for any damage that might result therefrom.
 A resolution of the Southern California Water Works was received in evidence, without objection. It recites generally that it had made a painstaking investigation of the subject and that it was not "convinced" that the medical benefits or detriments, the legal responsibility of the distributors, and the economic aspects of such treatment have been sufficiently explored to warrant the general and unrestricted application of fluorine to domestic supplies.
 It was agreed at the trial that the reports here in evidence were a part of the matters submitted and considered by the city council at the time of the hearing before it. Some of these reports contained the opinions and resolutions of the board of directors of the American Water Works Association, adopted at a convention in Illinois in 1949, covering fluoridation of public water supplies. It is to the effect that "in communities where strong public demand has been developed, *680 and the procedure has the full approval of the local medical and dental societies, the local and state health authorities, and others responsible for the communal health, water departments or companies may properly participate in a program of fluoridation of public water supplies"; that "The water works man is not in a technical position to recommend fluoridation. Such recommendations are the prerogative of the dental, medical and public health groups. The association has stated, however, that the water works industry is willing and ready to follow through when the proper authorities recommend or approve the treatment."
 The recommendations of the board of directors of the San Diego County Dental Society, in evidence, show that it went "on record approving fluoridation of the 'communal water supplies' in the San Diego water system after consultation with a three-man committee from the San Diego County Medical Society, and recommended one part per million of fluoride." A similar letter from the counsel of San Diego County Medical Society was received in evidence.
 The testimony of other witnesses was to the effect that mass fluoridation of a water system would be dangerous to health; that it might be conceded that use of fluoride can cause a decrease in the existence of dental caries, although there are "responsible authorities" on each side of the question.
 After presentation of this summarized evidence defendant's motion for a nonsuit was granted. Plaintiff appealed from an order based thereon. It is contended on this appeal that the trial court erred in granting a nonsuit when the evidence presented by petitioner, under the pleadings, presented a prima facie case for relief.
 In disposing of the question we must first look to plaintiff's petition in which he alleges the claimed grounds for the issuance of the injunction. They are first, that the resolution pleaded "exceeds the authority granted the city council" by its charter and the "Health and Safety Code."
 Sections 100 and 101 of that code have made the State Board of Public Health a part of the Department of Public Health, and it has power to formulate policies affecting public health, and to adopt, promulgate, repeal and amend rules and regulations consistent with law for the protection of the public health. Its membership must be composed of six licensed and practicing physicians of this state and one licensed and practicing dentist. The Director of Public Health must be *681 fully qualified in this field. ( 101 and 107.) Sections 4011 and 4011.5 thereof prohibit any person from furnishing water for domestic purposes without first applying for and receiving a permit so to do from the State Board of Public Health, and provide for the modification of, addition to, or change in the source of supply or method of treatment of water for domestic purposes. Section 4021 then allows the board to determine whether the water thus distributed is "pure, wholesome, and potable, and does not endanger the lives or health of human beings," and when it so determines it shall grant such a permit. Such a permit was issued in the instant case. [1a] It therefore is apparent that the Legislature has delegated to the State Board of Public Health the duty and powers necessary to control and regulate the purity, potability and wholesomeness of public waters in this state. [2] The Legislature is possessed of the entire police power of the state, except as its power is limited by the provisions of the Constitution and other laws applicable thereto. [3] Such police power is an indispensable prerogative of sovereignty and may not be legally limited even though at times its operation may seem harsh, so long as it is not unreasonable and arbitrarily invoked and applied. (Justesen's Food Stores, Inc. v. City of Tulare, 12 Cal.2d 324, 329 [84 P.2d 140].)
 [4] Section 4031 thereof makes it unlawful for any person to furnish or supply to a user water used or intended to be used for human consumption or for domestic purposes which is impure, unwholesome, unpotable, polluted, or dangerous to health. The standards set by this section are the same as those set forth in section 4021. These are only statutory regulations as to the quality of water to be furnished to consumers in this state, and the State Board of Public Health has made a finding that the water to be furnished under the fluoridation program does comply with these statutory standards. It therefore appears that the city council did not exceed the authority granted it under the Health and Safety Code. [5] It is within the authority of a city to adopt regulations designed to promote the health and welfare of the people. (Cal. Const., art. XI, 6, 11; Boyd v. City of Sierra Madre, 41 Cal.App. 520 [183 P. 230]; Miller v. Board of Public Works, 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479].)
 Section 1 of the city charter of San Diego grants authority to the city of San Diego to exercise such municipal powers *682 as are authorized to be granted to municipal corporations by the Constitution and laws of this state. (See Cal. Const., art. XI, 11.)
 [6] We therefore conclude that the addition of fluoride to the water supply, as directed by resolution of the city council, was a valid exercise of the police power of the city of San Diego, so long as it was not unreasonable or an abuse of discretion so to do. (Laurel Hill Cemetery v. San Francisco, 216 U.S. 358 [30 S.Ct. 301, 54 L.Ed. 515]; Roussey v. City of Burlingame, 100 Cal.App.2d 321 [223 P.2d 517].) [7] The determination by the legislative body that a particular regulation is necessary for the protection or preservation of health is conclusive on the courts except only to the limitation that it must be a reasonable determination, not an abuse of discretion, and must not infringe rights secured by the Constitution. (Powell v. Commonwealth of Pennsylvania, 127 U.S. 678 [8 S.Ct. 992, 1257, 32 L.Ed. 253]; Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11 [25 S.Ct. 358, 49 L.Ed. 643]; In re Lowenthal, 92 Cal.App. 200 [267 P. 886].)
 [8] It is to be noted that there is no allegation in the petition that the City Council of the City of San Diego abused its discretion, or that the determination made by it was unreasonable. Accordingly, the evidence to which petitioner points may not be considered in determining this fact. (Fuentes v. Tucker, 31 Cal.2d 1 [187 P.2d 752].)
 The only possible question remaining is whether or not the fluoridation of the water supply, under the evidence produced, was a plain, palpable invasion of the rights secured by fundamental law.
 In this connection it is alleged that the "Resolution introduces the thin end of the wedge of Socialized Medicine in violation of the Tenth Amendment to the U.S. Constitution, which reserves to the people the immunity of person"; that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The argument in this connection is that this state, through its Legislature, has declared its policy in reference to matters of religious objection to medical treatment, citing section 21003 of the Health and Safety Code; First Amendment to the Constitution of the United States; Thomas v. Collins, 323 U.S. 516 [65 S.Ct. 315, 89 L.Ed. 430]; and Cantwell v. State of Connecticut, 310 U.S. 296 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. *683 1352]; that the state, through its Legislature, has only permitted fluoridation of privately sold waters (Health & Saf. Code, 26470.5) leaving to the consumers a choice which is denied them by the instant resolution; that in refusing to pass the proffered legislation above mentioned, the Legislature has, in effect, refused such fluoridation as a public policy; that the consumers contracted for a particular water, and the substitute here made breaches that contract; that petitioner's independent right to life and liberty secured by the Fourteenth Amendment to the United States Constitution has been violated, citing Tomlinson v. Armour & Co., 75 N.J.L. 748 [70 A. 314, 196 L.R.A.N.S. 923]; and that accordingly, even under a general grant of power, a municipality cannot adopt ordinances which are unconstitutional or inconsistent with the public policy of the state, as declared in its legislation, citing 5 McQuillin, Municipal Corporations, p. 100, 15.21; 7 McQuillin, Municipal Corporations, p. 51, 24.222; 6 McQuillin, Municipal Corporations, p. 126, 20.51; Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11 [25 S.Ct. 358, 49 L.Ed. 643].
 [9] It does not clearly appear from the evidence produced that the ordinance is a plain, palpable invasion of the rights secured to petitioner by the fundamental law, nor does it appear that it violates any policy or laws of the State of California or that by reason of the facts established the ordinance is in the respects indicated unconstitutional. The matter was one within the sound discretion of the city council. [10] Failure of the Legislature to pass any particular measure is not conclusive evidence of its policy on the subject especially where, as here, the bill as proposed contained a provision granting immunity from liability in case of damage suits arising from the addition of fluoridation to water supplies. [1b] By the granting of the authority to the State Board of Health to issue a permit under the conditions stated, the Legislature has delegated to that board the duty to determine whether the water to be used is pure, wholesome, and not dangerous to life and health and its authority cannot, in this proceeding, be questioned.
 The United States Supreme Court, in establishing and clarifying the constitutional right of religious and other freedoms, has distinguished between the direct compulsions imposed upon individuals, with penalties for violations, and those which are indirect or reasonably incidental to a furnished service or facility. (Hamilton v. Regents of The University *684 of Calif., 293 U.S. 245 [55 S.Ct. 197, 79 L.Ed. 343]; West Virginia State Board of Education v. Barnette, 319 U.S. 624 [63 S.Ct. 1178, 87 L.Ed. 1628, 147 A.L.R. 674]; Cantwell v. State of Connecticut, 310 U.S. 296, 303 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352].)
 [11] It is true, as pointed out by appellant, that a motion for a nonsuit assumes as true every fact which the evidence, and presumptions fairly deductible therefrom, tend to prove, and on such motion the evidence must be taken most strongly against the defendant, and contradictory evidence must be disregarded. [12] Since the petition does not allege and the facts established do not show that the city council acted arbitrarily or abused its discretion, the court could acquire no jurisdiction to substitute its discretion for that of the determining body. [13] It here affirmatively appears that a hearing was had before the city council and practically all of the contentions here made as to the advisability of fluoridation of the city waters, were considered by that body, and it made the determination indicated by the resolution. Since the city council had jurisdiction to act and make such a determination, and such determination being neither unreasonable nor an abuse of discretion, the trial court properly determined that it was unauthorized to review the advisability of such determination by the city council, and an order for an injunction predicated on such a ground could not be sustained.
 Upon the showing made before the city council it might well have determined that it was not advisable to fluoridate the city waters. However, this was a matter for the determination by that body and the court's judgment could not be substituted for that of the city council. The city council still retains the right to abandon the project if, at any time, it may so determine. Likewise, a remedy by petition to that body for the repeal of the resolution or submission of the matter of its repeal to the electorate is provided. (Charter of the City of San Diego, 23 [Stats. 1931, p. 2838, at p. 2858, as amended, Stats. 1941, chap. 78, p. 3429, at p. 3434].)
 Order affirmed.
 Barnard, P. J., and Mussell, J., concurred.