[No. 15597.   Department One.—October 4, 1894.]

# LOUIS BRUCH, RESPONDENT, *v.* J. F. COLOMBET, APPELLANT.

CONSTITUTIONAL LAW—COMMON SCHOOL SYSTEM—CUSTODY OF SCHOOL MONEY BY CITY TREASURER—INVALID ACT.—That portion of section 1645 of the Political Code as amended in 1893, which provides that, in cities having a board of education, the city treasurer is to have the custody of state and county school money apportioned to the city, violates the constitutional requirement of uniformity of operation of general laws, and also the constitutional prohibition of special and local laws in the management of common schools, and is invalid.

ID.—SPECIAL AND LOCAL LEGISLATION—ARBITRARY CLASSIFICATION.—The prohibition of local and special laws cannot be evaded by arbitrary classification; and a law is not general or constitutional if it confers particular privileges or imposes peculiar disabilities or burdensome conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from a general body of those who stand in precisely the same relation to the subject of the law.

ID.—PURPOSE OF INHIBITION.—One purpose of the inhibition of special and local legislation is to make as many as possible interested in every act passed.

ID.—UNIFORMITY OF GENERAL LEGISLATION—RULE NOT INFLEXIBLE—PRESUMPTION—ENFORCEMENT OF INHIBITION.—There is no absolute or inflexible rule by which to determine what departure from uniformity is permissible and what would be fatal; but the court must determine each case as it arises, presuming in favor of the rightful exercise of the legislative power, yet the inhibition against special legislation should be enforced unless there is discoverable some reasonable ground for a distinction.

APPEAL from a judgment of the Superior Court of Santa Clara County.

The facts are stated in the opinion.

*H. V. Moorehouse,* and *Hiram D. Tuttle,* for Appellant.

*Wilcox & Patton,* for Respondent.

TEMPLE, C.—This is an agreed case.   It is stipulated that the school district of San Jose is a *quasi* municipal corporation, and that it embraces the same territory as the city of San Jose.   That the school district has a board of education.

That plaintiff possesses all the qualifications pre-

scribed by law or the rules and regulations of the county board of education for Santa Clara county, to teach in the grammar and primary schools of said district, and July 5, 1893, was employed by the said board of education as principal of a school in said district at a salary of one hundred and twenty dollars per month, and immediately entered upon such service, and therefore was entitled to receive as his salary for the month of November, 1893, the sum of one hundred and twenty dollars.

That during all of said time defendant was treasurer of the city of San Jose. That the state school fund was duly apportioned among the counties, and Santa Clara county received its portion, of which eleven thousand seven hundred and forty-seven dollars and forty cents was apportioned to the school district of San Jose.

That July 17, 1893, the said board of education drew an order upon the county superintendent in favor of the treasurer of the city of San Jose for said sum, which order was presented by defendant as treasurer of the city to the county superintendent, who thereupon drew his requisition upon the county auditor against the said state school fund so apportioned to the school district; that the auditor thereupon drew his warrant upon the county treasurer in favor of the city treasurer for said amount, and said city treasurer received the said money in pursuance thereof, and placed the same in the city treasury. At divers times the board of education drew warrants against the same, which warrants were paid as drawn until only eight hundred and fifty-two dollars of said funds now remain in the treasury. That plaintiff duly procured a warrant in his favor for the said amount due him as salary, and presented the same to defendant as city treasurer, and demanded payment of the same, which defendant refused.

Wherefore he demands a peremptory writ of mandate.

In the affidavit attached to the agreed statement it is

said that the treasurer has been in the habit of paying warrants drawn upon the money apportioned to the district by the county superintendent from the state and county school funds.   That in March, 1893, the supreme court decided that, under the law as it then existed, the custody of state and county school funds belonged to the county treasurer.   That subsequently to said decision the legislature passed an act making the city treasurer the custodian of state and county school moneys apportioned to school districts within municipalities and having boards of education.   That in consequence of said decision a controversy has arisen as to the legal custodian of such state and county school money, and this proceeding is instituted in good faith to determine the rights of the parties and such controversy.

That there is now ·in the county treasury seventeen thousand dollars belonging to said school district, but owing to the uncertainty of the law "no one knows who is entitled to the custody of said moneys."

The doubt whether the amended statute is valid arises from the fact that it establishes a different rule in regard to the custody of the moneys belonging to school districts within municipalities and having boards of education from that prevailing in those in which there are no such boards.

The amendment referred to is of subdivision 3 of section 1543 of the Political Code, by the legislature of 1893.   It is as follows:

"Third. 1. On the order of the board of school trustees, to draw his requisition upon the county auditor for all necessary expenses against the school fund of any district, or of any city or town which has not a board of education.   The requisitions must be drawn in the order in which the orders therefor are filed in this office. Each requisition must specify the purpose for which it is drawn; but no requisition shall be drawn unless the money is in the fund to pay it; and no requisition shall be drawn upon the order of the board of school trustees against the funds of any district, except for teachers'

salaries, unless such order is accompanied by an itemized bill showing the separate items, and the price of each, in payment for which the order is drawn; nor shall any requisition for teachers' salaries be drawn unless the order shall state the monthly salary of the teacher, and name the months for which such salary is due. Upon the receipt of such requisition the auditor shall draw his warrant upon the county treasurer in favor of the parties for the amount stated in such requisition.

"2. On the order of the board of education of any city having a board of education, the county superintendent shall draw his requisition upon the county auditor in favor of the city treasurer of said city for all state and county moneys, and for all other moneys apportioned by the said superintendent to said city. Upon the presentation of said requisition the county auditor shall draw his warrant upon the county treasurer in favor of the treasurer of said city for the amount stated in said requisition. It shall be the duty of the county treasurer to pay the amount stated in the warrant of the county auditor to the treasurer of said city; and it shall be the duty of the treasurer of said city to receive and safely keep all moneys so received, and to pay the same out upon the order of the board of education of said city, which order must be issued by said board of education as provided in division (1) one of this subdivision of section one thousand five hundred and forty-three of the Political Code."

It is contended that this is special and local legislation. The constitution provides (sec. 5, art. IX): "The legislature shall provide for a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established."

In regard to this section it was said in *Kennedy* v. *Miller*, 97 Cal. 429: "The term 'system' itself imports a unity of purpose as well as an entirety of operation, and the direction to the legislature to provide 'a' system of

common schools means *one* system which shall be applicable to all the common schools within the state."

The constitution also provides (sec. 25, art. IV), that the legislature shall not pass local or special laws providing for the management of common schools, nor in any case where a general law can be made applicable. Also section 11, article I: All laws of a general nature shall have a uniform operation. Section 22, article I, makes the provisions of the constitution mandatory and prohibitory unless expressly otherwise provided.

The legislature has practically classified the school districts throughout the state into: 1. School districts not having boards of education; and 2. School districts having boards of education. The laws make many and important differences in the management of these two classes. Of course, as has been frequently decided, the prohibition of special and local laws cannot be evaded by arbitrary classification. In fact a special law—special, as opposed to general laws on one hand, and private acts on the other—classifies the subjects of the law for the purpose of the special provisions. This classification is the very thing prohibited by the constitution.

In *Earle* v. *Board of Education*, 55 Cal. 489, it is said by Myrick, J.: "A special law is one referring to a selected *class*, as well as to a *particular object*. This act refers to a selected class, viz., teachers in cities of one hundred thousand inhabitants."

The act was held void as special legislation.

Of course, the legislature may classify for the purpose of legislation where there is some intrinsic reason why the law should operate upon some and not on others, or should affect some differently from its effect upon others. This has been often expressed and with particular care in *City of Pasadena* v. *Stimson*, 91 Cal. 238. It is there said: "The conclusion is that, although a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular

privileges or imposes peculiar disabilities or burdensome conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law."

I think this a very good statement of the rule so far as it goes, and it was sufficient for the purposes of the case in which it was laid down. I think, however, one purpose of the inhibition of special and local legislation was to make as many as possible interested in every act passed.

As a rule, the entire effect of an act of the legislature cannot be foreseen, and those seeking vicious legislation have often succeeded in covering their designs under apparently harmless provisions. It was easier to do this in special or local bills in which few were interested. This, I think, was the principal consideration which moved the convention and the people of the state in adopting the provision. It was to make all the members of the legislature responsible so far as possible, and therefore alert as to all legislation. I think, therefore, special legislation is prohibited even when we can see, or think we can, that special privileges are given to no one.

It is obvious, however, that what may be called the extreme view in regard to these limitations cannot prevail. Otherwise the legislature would be shorn of all power to adapt its laws to differing conditions. An efficient system of common schools *must* differ in some respects in its details as to schools in sparsely settled districts and in towns.

No absolute, inflexible rule has ever been formulated, and probably never will be, by which to determine what departure from uniformity is permissible, and what will be fatal. The courts must determine each case as it arises, presuming in favor of the rightful exercise of the legislative power. Yet the inhibition should be enforced unless there is discoverable some reasonable ground for a distinction.

In *Kennedy* v. *Miller*, 97 Cal. 429, it is said that the constitution imposed upon the legislature the duty of establishing a uniform system of school districts; that nevertheless boards of education were created in local laws for the incorporation of cities, and in the law concerning municipal corporations. It is suggested that boards of education perform nearly the same functions as trustees of school districts, and the question is reserved as to whether the laws are valid which impose different duties upon the two sets of officers.

The school law seems to have been drafted without much regard to the constitutional requirement of uniformity, but we have here to consider only this one provision in regard to the custody of state and county school moneys.

Now, the fact that the money for school districts having boards of education can all be drawn out of the county treasury on one requisition, and not as required for school necessities, does make a difference, for which I can discover no reason in the nature of things. By the first subdivision of the same section, in which this requisition is authorized, the school superintendent is required to apportion the school moneys to each school district four times a year. For this purpose he may require a report from the county auditor of the amount of school moneys on hand, and whenever an excess of money has accumulated to the credit of a school district by reason of a large census roll and a small attendance, beyond a reasonable amount necessary to maintain a school for eight months in such district for the year, the superintendent of schools shall place such excess of money to the credit of the unapportioned school funds of the county, and shall apportion the same as other school funds are apportioned.

The county auditor cannot keep such an account as will show whether funds have accumulated to the credit of districts having boards of education or not, and if the superintendent can ascertain the facts in any other way, I can discover no mode in which the funds can be

replaced in the county treasury. (See *Welsh* v. *Bramlet*, 98 Cal. 221.)

I find also a provision in the same act, in a subsequent section, which seems inconsistent with the provision requiring the state and county school moneys to be deposited in the city treasury. Subdivision 2, section 1617, directs both trustees of school districts and boards of education to pay all moneys collected by them from any source whatever for school purposes into the county treasury, to be placed to the credit of the special fund of their districts. This would imply that there is kept in the county treasury a special fund for the districts having boards of education, and that all moneys collected by the board shall be deposited there by them.

I think the law authorizing the city treasurer to have the custody of state and county school money is invalid because it violates the requirement of uniformity and the provisions prohibiting special and local laws in the management of common schools, and that the writ should be denied.

BELCHER, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion, the judgment is reversed, and the court is directed to enter an order denying the plaintiff's application.

HARRISON, J., GAROUTTE, J., DE HAVEN, J.