[Crim. No. 4191. In Bank.—January 6, 1939.]

THE PEOPLE, Respondent, v. LUTHER HINES, Appellant.

Stephen P. Galvin for Appellant.

U. S. Webb, Attorney-General, Gordon S. Hughes, Deputy Attorney-General, and F. A. Silveira, District Attorney, for Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, Third Appellate District. After further consideration we are satisfied that the following opinion of Mr. Justice Thompson correctly determines the issues, and accordingly adopt it as the opinion of this court:

"The defendant, a negro, was convicted of murder of the second degree for shooting and killing a colored man. His challenge to the panel under the provisions of section 1058 of the Penal Code, on the ground that all negroes were excluded from the venire, contrary to the mandate of the fourteenth amendment of the federal Constitution was denied. A motion to quash the venire on the same ground was also denied. From the judgment and from an order overruling his motion for a new trial the defendant has appealed.

"It is contended the verdict and judgment are not supported by the evidence; that the defendant was denied due

process and equal protection of the law, and that he was not afforded a trial by an impartial jury, which privileges are guaranteed by amendments VI and XIV of the Constitution of the United States.

■ ''The evidence is conflicting, but it satisfactorily shows that the defendant, a colored man, attended a party given by negroes at the Clayton ranch in Merced county on the evening of November 20, 1937. Many of the guests remained until early the following morning. During the progress of the party a quarrel occurred between two other negroes named Banks and Bailey, over a game of craps. In the course of the melée Banks cut Bailey with a knife, after which he fled and hid for a time in an adjoining cotton field. After midnight, Banks returned and entered the south room of the house. Soon thereafter, and about 1 o'clock on the morning following the affray, Hines reappeared with a revolver in his hand. He was very angry with Banks for cutting his friend Bailey. He cursed Banks in the vilest of language and threatened to shoot him, saying, 'He don't need to live, and cannot live.' With his revolver in hand, he entered the kitchen where he was met by a colored woman who protested with him against shooting Banks. He brushed her aside and entered the south room, where he found Banks standing near the center of the floor. He deliberately shot him three times. One bullet struck his victim in the front right side of the abdomen. Another bullet struck him in the face, fracturing his jaw and lodging in the vertebrae in the back of his neck. Banks fell to the floor and subsequently died from the effect of his wounds.

''The defendant fled from the state. He became a fugitive from justice. Finally he was arrested in Mississippi and was returned to California for trial. He pleaded self-defense, claiming that the deceased made an attack upon him with a knife, and that he shot him believing that he was then in imminent danger of being killed. Evidently the jury did not believe his story . that the deceased assaulted him with a knife. They must have believed that armed with a loaded revolver, and threatening to shoot the deceased, the defendant deliberately hunted him up and killed him. The jury found the defendant guilty of murder of the second degree. From the judgment which was accordingly rendered and from

an order denying defendant's motion for a new trial he has appealed.

"The verdict and judgment are adequately supported by the evidence.

"Upon the challenge to the panel and the motion to quash the venire, which were filed in writing, before the jury was sworn, evidence was adduced, from which it appears without conflict that all individuals of the negro race were excluded from the venire and from the jury regardless of their statutory qualifications as prescribed by section 198 of the Code of Civil Procedure. The district attorney stipulated to all of the facts offered by the defendant with relation to the exclusion of negroes from the venire and from the jury. No evidence was offered in rebuttal of the showing made by the defense. The stipulated evidence contains statements by the county clerk and three of his deputies, by the county auditor, the official reporter, the district attorney, a judge of the superior court, and an attorney who had practiced his profession in Merced county for twenty-eight years, to the effect that no negro had ever been placed on the venires or called for jury service in criminal cases in Merced county. At least it appears that practice was followed for the period of a generation or more. There is no evidence that a negro ever sat upon a jury in Merced county. It also appears that over eight per cent of the entire population of Merced county are negroes, and that seven per cent of the entire population are negroes who are qualified voters. It specifically appears that at least forty-two of them possess all the qualifications to act as jurors required by section 198 of the Code of Civil Procedure. No attempt was made to justify or excuse the deliberate exclusion of negroes from service on juries in Merced County during all that period of time. The defendant, over his protest, was tried and convicted by a jury consisting entirely of white men and women. Because of the custom which had prevailed in Merced county to exclude from jury service all colored people, the defendant was not afforded the possibility of selecting upon his jury a single member of his own race. This was clearly in conflict with the inhibitions of amendments VI and XIV of the Constitution of the United States. (*Norris* v. *Alabama*, 294 U. S. 587 [55 Sup. Ct. 579,

79 L. Ed. 1074]; *Neal* v. *Delaware*, 103 U. S. 370 [26 L. Ed. 567]; *Hale* v. *Kentucky* [April, 1938], 303 U. S. 613 [58 Sup. Ct. 753, 82 L. Ed. 1050].)

"Amendment VI of the federal Constitution provides in part that:

" 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury.'

"Amendment XIV of the federal Constitution also provides, in accordance with the principle declared in Magna Charta:

" 'Nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'

■ "Clearly the preceding mandates imply that one who is on trial for an alleged crime is entitled to a jury from which individuals of his own race who are otherwise qualified as jurors in the particular case, have not been arbitrarily excluded merely because of their nationality, race or color. That does not mean that an accused is entitled to a jury upon which there are members of his own race. It only means that qualified jurors must not be excluded from service merely because of their nationality, race or color. ■ The California statutes with relation to the method of selecting and impaneling jurors in criminal cases are fair, impartial and constitutional. The denial of an impartial jury, of due process and equal protection of the laws in the present case are not attributable to the defects of our law, but rather to the custom of the officers to exclude negroes in selecting and impaneling juries in Merced County. In the Norris case, *supra*, it is said in that regard:

" 'Although the state statute defining the qualifications of jurors may be fair on its face, the constitutional provision affords protection against action of the state through its administrative officers in effecting the prohibited discrimination.'

"Part 1, title 3, chapter 1, articles III and IV, of the Code of Civil Procedure provide for the method of selecting and impaneling trial jurors by means of the regular venire. Section 227 of the same code provides for a special venire under designated circumstances. Section 198 of that code specifies the required qualifications of all such jurors. It

is declared that such qualified 'men and women' shall be so selected for jury service. That implies they must be selected regardless of their race, color or nationality. The statutes of California do not restrict the selection of jurors to members of the Caucasian race.

''In view of the affirmative showing in the present case, which tends to prove there was a deliberate practice on the part of the officers of Merced County, who are charged with the selection and impaneling of juries, to exclude therefrom under all circumstances all individuals of the negro race, regardless of their statutory qualifications, we are impelled to hold that the challenge to the venire was erroneously denied, and that the defendant was not afforded such equal protection of the law and an impartial jury as are guaranteed by the federal Constitution.

''It appears that over seven per cent of the population of Merced County are negroes who are qualified electors therein, and that many of them possess all the statutory qualifications entitling them to act as jurors. To exclude from jury service, in a criminal case against a colored defendant, all members of his race who are otherwise qualified, merely because of their race or color, is an unconstitutional discrimination against the accused. It may not be reasonably said there is a presumption that an individual lacks intellectual, moral or physical qualifications to act as a juror merely because he belongs to the negro race. In the Neal case, *supra*, Mr. Justice Harlan of the United States Supreme Court said in that regard:

'' 'It was . . . a violent presumption . . . that such uniform exclusion of that [colored] race from juries, during a period of many years, was solely because, in the judgment of those officers, fairly exercised, the black race in Delaware were utterly disqualified, by want of intelligence, experience, or moral integrity, to sit on juries.'

''The Norris case, *supra*, which was decided by the United States Supreme Court in 1935, is decisive of the question presented on this appeal with relation to the unlawful exclusion of negroes from the venire. In that case a negro was convicted in Morgan county, Alabama, of rape and sentenced to be hanged. A challenge to the panel and a motion to quash the venire were made and denied in that case just

as they were presented and overruled in this case, upon the same ground and supported by similar evidence. Upon appeal to the Supreme Court of the United States, the judgment was reversed on the ground that the conduct of the officers in excluding from the jury impaneled to try the defendant all negroes regardless of their statutory qualifications, was a violation of the constitutional guaranty of due process, equal protection of the laws and a trial by an impartial jury assured by amendments VI and XIV of the federal Constitution. In that case a strenuous effort was made to justify the omission of names of colored persons from the jury list. No such effort was made in this case. It appeared that in Morgan county, where the case was tried, about eighteen per cent of the population were negroes. They had never been placed on the jury lists. The statute in Alabama is practically the same as that of California with respect to the qualifications which are required of competent jurors. In the Alabama case the commissioners attempted to justify their exclusion of negroes from jury service by the inherent right of exercising a liberal discretion in determining the qualifications which a. competent juror should possess. In explaining their uniform failure to place negroes on the available jury list one of the commissioners testified that he never knew a negro in that county who possessed the intelligence, integrity, character or judgment which would qualify him as a competent juror. In response to that extravagant statement the court said:

" 'In the light of the testimony given by defendant's witnesses, we find it impossible to accept such a sweeping characterization of the lack of qualifications of negroes in Morgan county.'

"The evidence in the present case was evidently offered to conform to the facts disclosed by the record in the Norris case. It seems to fit the situation presented in that case. almost exactly. The same uniform practice existed in Morgan county, Alabama, which was followed in Merced county for a generation or more, to exclude all colored people from jury service without regard to their qualifications. The Norris case is decisive of this appeal. The court there said:

" 'Summing up precisely the effect of earlier decisions, this court thus stated the principle in *Carter* v. *Texas*, 177 U. S. 442, 447 [20 Sup. Ct. 687, 44 L. Ed. 839, 841], in rela-

tion to exclusion from service on grand juries: "Whenever by any action of a state, whether through its legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied to him contrary to the fourteenth amendment of the Constitution of the United States. . . . The principle is equally applicable to a similar exclusion of negroes from service on petit juries. . . . Although the state statute defining the qualifications of jurors may be fair on its face, the constitutional provision affords protection against action of the state through its administrative officers in effecting the prohibited discrimination. . . . "

" 'The testimony in itself made out a *prima facie* case of the denial of the equal protection which the Constitution guarantees. . . .

" 'For this long-continued, unvarying, and wholesale exclusion of negroes from jury service we find no justification consistent with the constitutional mandate. . . .

" 'Upon the proof contained in the record now before us, a conclusion that their continuous and total exclusion from juries was because there were none possessing the requisite qualifications, cannot be sustained.

" ' . . . In view of the denial of the federal right suitably asserted, the judgment must be reversed and the cause remanded for further proceedings.'

"On the authority last cited and upon principle, it is apparent the challenge to the panel in this case, and the motion to quash the venire should have been granted for the reason that the constitutional guaranty of equal protection of the laws and of a trial in a criminal case by an impartial jury were not afforded to the appellant for the reason that all persons of the negro race to which he belongs were exempted from the venire and from the jury by which he was tried."

The judgment and the order are reversed and the cause is remanded for a new trial.