[Crim. No. 6215. In Bank. Oct. 31, 1958.]

In re MAGNUS J. PETERSEN, on Habeas Corpus.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Arlo E. Smith, Deputy Attorney General, Thomas C. Lynch, District Attorney (San Francisco), Dion R. Holm, City Attorney (San Francisco), and George E. Baglin, Deputy City Attorney, for Respondent.

Ackerman, Johnston, Johnston & Mathews and Philip S. Mathews as Amici Curiae on behalf of Respondent.

GIBSON, C. J.—This proceeding in habeas corpus involves sections 1119 and 1156 of the Police Code of the City and County of San Francisco. Under section 1119 the chief of police may designate stands on public streets to be used by taxicabs, if the written consent of the person who occupies the ground floor of the building fronting the proposed stand is first obtained; a permit shall specify the name of the permittee and the number of vehicles authorized to use the stand at any one time, and it shall be unlawful for the owner or operator of any public passenger vehicle for hire, other than the permittee, to occupy the stand.[1] Section 1156 provides, in part, that a driver of a taxicab shall not wait for employment by passengers on any public street or place except at a

---

[1]Section 1119 of the Police Code of the City and County of San Francisco provides:

"Stands for Taxicabs, Etc.—Regulations. (a) Stand Designated by Chief of Police. In addition to the stands provided for in Sections 1117 and 1118 and consistent with the provisions of Section 1118 of this Chapter, the Chief of Police may designate in writing, stands on public streets to be occupied by taxicabs, sedans, limousines and sightseeing buses, after permit to operate said vehicle or vehicles has been issued and the license fee has been paid as in this Chapter, or other sections of the San Francisco Municipal Code provided.

"(b) Consent of Tenant Required. Before any designation of stands is made by the Chief of Police as provided in this section, the written consent of the tenant or lessee of the ground floor or portion of the ground floor fronting the space where such stand is to be located must first be obtained. In the event the ground floor or the portion of the ground floor fronting the space where such stand is to be located is not occupied by a tenant or lessee, then the written consent of the owner of the building fronting the space where such stand is to be located must be first obtained.

"The stand permit shall specify the name and address of the permittee and the number of vehicles and class and character of service authorized thereunder. No vehicle licensed to operate pursuant to this Chapter, while awaiting employment by passengers, shall stand on any public street at a place other than upon a stand designated and established in accordance with the provisions of this Article, and no such vehicle shall occupy such stand unless it is licensed to do so. It shall be unlawful for the owner or operator of any public passenger vehicle for hire, other than the permittee, to use the stand designated under such permit.

"(c) Number of Machines Designated by Chief of Police. The Chief of Police shall designate the number of taxicabs, sedans, limousines or sightseeing buses that shall be allowed to stand at any one time at any of the places designated or authorized.

"(d) Revocation of Stand Permits. Any stand permit may be revoked by the Chief of Police, without notice to any person except the holder of the permit, and it shall be unlawful for any person, firm

stand designated or established in accordance with the provisions of sections 1115 through 1160 of the Police Code.[2]

Petitioner was arrested when he parked a taxicab owned by the Veterans Cab Company in a stand which had been designated as a Yellow Cab Company stand, and, at the time he instituted this proceeding, he was being held for trial on a charge of violating sections 1119 and 1156. While we were considering his petition and before we issued the writ, the municipal court admitted him to bail. The questions presented are whether habeas corpus is a proper remedy and, if so, whether sections 1119 and 1156 are constitutional.

It is settled, of course, that habeas corpus is available to test the constitutionality of legislation under which a petitioner is held. (*In re Florance*, 47 Cal.2d 25, 28 [300 P.2d 825] ; *In re Bell*, 19 Cal.2d 488, 495 [122 P.2d 22].) Respondents contend that the writ does not lie because petitioner has been admitted to bail by the municipal court. The availability of the writ, however, does not depend on actual detention in prison. Where a person has been released on parole, this court has issued habeas corpus, pointing out that he was constructively a prisoner subject to restraint by the penal authorities. (*In re Harincar*, 29 Cal.2d 403, 408 [176 P.2d 58] ; *In re Marzec*, 25 Cal.2d 794, 797 [154 P.2d 873].)

Petitioner here is also constructively in custody and subject to restraint since the primary purpose of bail, whether before or after conviction, is practical assurance that he will attend upon the court when his presence is required. (See *In re Brumback*, 46 Cal.2d 810, 813 [299 P.2d 217].)

Moreover, this court may admit a petitioner to bail pending determination of habeas corpus proceedings (Pen. Code, § 1476), and it would be unreasonable to hold that we lack jurisdiction to issue the writ merely because another court has released him on bail after the filing of his petition.

---

or corporation to occupy a stand with a taxicab, sedan, limousine or sightseeing bus after such notice or revocation has been made.

"(e) Revocation of Permit by Chief of Police. Any stand designated by the Chief of Police as provided in this section may be revoked at his pleasure; and it shall be unlawful for any person, firm or corporation to occupy said stand with a taxicab, limousine or sedan, after such revocation has been made and notice thereof given."

[2]Section 1156 of the Police Code of the City and County of San Francisco provides: "No driver of any taxicab, limousine or sedan, while awaiting employment by passengers, shall do any of the following:

"(a) Stand on any public street or place other than or upon a stand designated or established in accordance with the provisions of Sections 1115 to 1160, inclusive, of this Chapter, . . ."

■ We conclude that, under the circumstances present here, habeas corpus is an appropriate remedy even though bail has been allowed. The cases of *Matter of Ford,* 160 Cal. 334, 342 [116 P. 757, Ann.Cas. 1912D 1267, 35 L.R.A.N.S. 882], *Ex parte Schmitz,* 150 Cal. 663 [89 P. 438], *In re Gilkey,* 85 Cal.App. 484 [259 P. 766], and *In re Ortiz,* 71 Cal.App. 153 [234 P. 877], are disapproved insofar as they are inconsistent with this conclusion.

Petitioner urges that sections 1119 and 1156 of the Police Code are unconstitutional on the following three grounds: (1) the establishing of a stand for the exclusive use of one permittee constitutes an unreasonable exercise of the police power and violates the equal protection clause, (2) the requirement of previous consent of the occupant of the adjacent real property is an improper delegation to a private person of power to decide who may have a taxicab stand on the public streets, and (3) the provision which grants the chief of police discretion to designate exclusive stands fails to prescribe any standards to guide him in that respect.

Section 589.6 of the Vehicle Code specifically empowers local authorities to regulate taxicab stands on the streets. ■ Ordinances are presumed to be valid, and no provision of the challenged ordinance may be condemned as an improper exercise of the police power if any rational ground exists for its enactment. (*Hart* v. *City of Beverly Hills,* 11 Cal.2d 343, 348 [79 P.2d 1080] ; *Parker* v. *Colburn,* 196 Cal. 169, 178 [236 P. 921].) ■ In this connection it is apparent that taxicab stands for the exclusive use of one permittee may, from the point of view of the public interest, have advantages over stands open to all. If many cabs of different owners should try to park at one stand, an obstruction of traffic might result. The sole permittee who has a telephone connection with its exclusive stand would be in a better position to maintain a constant cab service at the stand, without an excessive supply of cabs at some times and a dearth at others. Exclusive stands may facilitate police supervision and may prevent disorderly and aggressive solicitation of one customer by drivers of different taxicab owners. Accordingly; we cannot agree that there are no rational grounds for the establishment of exclusive stands.

Nor can we agree that the granting of such stands to one permittee is invalidly discriminatory. ■ The use of highways by a common carrier is a privilege which may be granted or withheld by the state in its discretion, without violating

either the due process clause or the equal protection clause. (*Buck* v. *Kuykendall*, 267 U.S. 307 [45 S.Ct. 324, 69 L.Ed. 623, 38 A.L.R. 286] ; *Holmes* v. *Railroad Com.*, 197 Cal. 627, 633 [242 P. 486].) This rule was relied upon in the case of *In re Graham*, 93 Cal.App. 88, 93 [269 P. 183], where the court declared that a city council has the authority to abolish taxicab stands from its streets. It has also been recognized that, in general, the government has power to grant exclusive rights to engage in services of a public character as contrasted with an ordinary business or profession. (See *Matter of Russell*, 163 Cal. 668, 674-675 [126 P. 875, Ann.Cas. 1914A 152] [reversed on another point in *Russell* v. *Sebastian*, 233 U.S. 195 (34 S.Ct. 517, 58 L.Ed. 912)] ; 1 Cooley's Constitutional Limitations (8th ed. 1927), p. 580; 12 Am.Jur. 227-228; 23 Am.Jur. 727 ; 22 Cal.Jur.2d 659.)

 The power to establish exclusive stands contained in an earlier form of the ordinance here under consideration was upheld as a regulation conducive to the general welfare comparable to the granting of an exclusive franchise. (*People* v. *Galena*, 24 Cal.App.2d Supp. 770, 785 [70 P.2d 724].)

 It seems obvious that, since a municipality may deny the use of its streets to all but one common carrier, it may validly direct that each of several taxicab owners use separate stands.

 The requirement of consent of the occupant of the adjacent real property does not render the ordinance unconstitutional. Such a requirement is proper where the proposed activity is otherwise prohibited and the prohibition is a reasonable exercise of the police power. (*Cusack Co.* v. *City of Chicago*, 242 U.S. 526 [37 S.Ct. 190, 61 L.Ed. 472] [large billboards in residential street] ; *cf. Crowley* v. *Christensen*, 137 U.S. 86 [11 S.Ct. 13, 34 L.Ed. 620], affirming *Ex parte Christensen*, 85 Cal. 208 [24 P. 747] [retail liquor business].) It is pointed out in the Cusack case that a Chicago ordinance permitting the construction of billboards with the consent of interested property owners could not injure the complaining party because without such a provision the billboards would have been absolutely prohibited. In San Francisco the only provision of the Police Code for the designation of taxicab stands, aside from section 1119, is section 1117 which provides for "public" stands at specified places not involved in the present case, such as wharves and railroad depots. Section 1156 prohibits drivers from awaiting employment by passen-

gers in a place on the street which has not been designated as a stand. This section, which is clearly a reasonable exercise of the police power, would have prevented petitioner from awaiting employment on the streets in any place other than a "public" stand, if section 1119 had not created the possibility of the designation of additional stands with the consent of the occupants of adjacent property.

It cannot be said that the consent requirement is unreasonable because of the asserted lack of legitimate interest on the part of the occupant of the adjoining property. The presence of a taxicab stand in front of private property may be desired by some (e.g., hotel owners) and considered objectionable by others (e.g., home owners), and those who wish to have a taxicab stand in front of their premises are interested in orderly service at the stand and in good relations with the permittees. Under these circumstances it can reasonably be considered in the interest of harmonious relations and good service to give effect to the preferences of the occupants of the property in designating stands and their permittees. If the consent system also has undesirable features, such as the power of the occupant to exact payment for his consent, the weighing of the advantages and disadvantages is a matter of policy wholly within the legislative power of the municipality.

By requiring the consent of private persons the Police Code does not delegate to them the power to designate taxicab stands. The ultimate power remains in the chief of police, and the requirement of consent is only made a condition precedent to the designation.

With respect to the question of standards for administrative action the general rule is that a legislative body cannot confer unlimited power upon an officer without designating standards to guide his action. (*Jersey Maid Milk Products Co.* v. *Brock*, 13 Cal.2d 620, 641-642 [91 P.2d 577].) However, there are limitations on the general rule which are applicable to the case before us.

The granting of discretionary power, not restricted by specific standards, to confer or deny licenses or permits has been upheld in a variety of situations where the licensed activity, because of its dangerous or objectionable character, might be regulated or restricted to certain localities. (*Parker* v. *Colburn*, 196 Cal. 169, 177-178 [236 P. 921] [permit for public garage]; *In re Holmes*, 187 Cal. 640, 646-647 [203 P. 398] [permit for dealer in second-hand merchandise]; *Ex*

*parte Christensen,* 85 Cal. 208, 213 [24 P. 747] [license as a retail liquor dealer]; *Ex parte Fiske,* 72 Cal. 125, 127-128 [13 P. 310] [permit to alter or repair wooden buildings within the fire limits]; *City of South Pasadena* v. *City of San Gabriel,* 134 Cal.App. 403, 407 [25 P.2d 516] [permit to drill for water]; *Bleuel* v. *City of Oakland,* 87 Cal.App. 594, 597 [262 P. 477] [permit for the operation of a riding academy]; *Boyd* v. *City of Sierra Madre,* 41 Cal.App. 520, 525-526 [183 P. 230] [permit for mule corral in business district]; *People* v. *Amdur,* 123 Cal.App.2d Supp. 951, 962-964 [267 P.2d 445] [permit for temporary obstruction of sidewalk]; see *Sunny Slope Water Co.* v. *City of Pasadena,* 1 Cal.2d 87, 96 [33 P.2d 672].) This limitation on the general rule was applied in the case of *In re Graham, supra,* 93 Cal.App. 88, 91, in sustaining a discretionary power, not governed by any standards, to grant and refuse permits to occupy taxicabs stands. Similarly, an earlier form of the ordinance attacked here was upheld in *People* v. *Galena, supra,* 24 Cal.App.2d Supp. 770, 779 et seq.

The absence of express standards in such situations does not mean that the licensing agency may act arbitrarily or oppressively; it is presumed that the agency will duly perform its public duty, but an abuse may be shown and relief obtained in the courts. (*In re Holmes, supra,* 187 Cal. 640, 647; *Gaylord* v. *City of Pasadena,* 175 Cal. 433, 440 [166 P. 348]; *Roussey* v. *City of Burlingame,* 100 Cal.App.2d 321, 326 [223 P.2d 517]; *Bleuel* v. *City of Oakland, supra,* 87 Cal. App. 594, 600.)[3] No arbitrary or oppressive exercise of discretion by the chief of police, to the detriment of petitioner, has been shown in this case.

Moreover, standards for administrative action can sometimes be found by implication. In *Rescue Army* v. *Municipal Court,* 28 Cal.2d 460, 471 [171 P.2d 8], where an ordinance requiring a permit was involved, we held that sufficient standards were inherent in the reasons which must have led to the adoption of the ordinance. In the present case it is clear that the purpose of controlling taxicab stands by

---

[3] The provision of subdivision (d) of section 1119 which gives the chief of police power to revoke stand permits ''at his pleasure'' is not directly involved in this case. It has been held that such a provision means that the licensing agency may act only in the exercise of a wise discretion, not that it may act capriciously. (*Marrone* v. *City Manager of Worcester* (Mass.), 108 N.E.2d 553, 554; *People* ex rel. *Curtis* v. *Hogeboom,* 185 App.Div. 777 [173 N.Y.S. 417]; *MacDonald* v. *De Waele,* 263 Mich. 233 [248 N.W. 605, 606].)

issuance of permits is to make satisfactory and orderly taxi-cab service readily available to the public without unnecessary obstruction of traffic. This purpose supplies standards which the chief of police must observe in granting or denying the permits. It is difficult to see how, as a practical matter, any additional standards could be set forth which would promote the objective of the ordinance, and nothing would be accomplished by requiring that the standards which are implied must be made express.

The writ is discharged.

Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

CARTER, J., Concurring and Dissenting.—I agree with the majority that habeas corpus is the proper remedy in the situation here presented and that habeas corpus will lie despite the fact that petitioner has been admitted to bail.

I disagree with the conclusion of the majority that sections 1119 and 1156 of the Police Code of the City and County of San Francisco are constitutional.

With respect to petitioner's contention that the ordinance here involved is unconstitutional, it should be noted initially that New Montgomery Street, on which the Sheraton-Palace Hotel faces, is a street dedicated to the public use. We held in *Escobedo* v. *State*, 35 Cal.2d 870, 875 [222 P.2d 1], that " 'The streets of a city belong to the people of the state, and the use thereof is an inalienable right of every citizen, subject to legislative control or such reasonable regulations as to the traffic thereon or the manner of using them as the legislature may deem wise or proper to adopt and impose.' (19 Cal. Jur. 54, § 407.) 'Streets and highways are established and maintained primarily for purposes of travel and transportation by the public, and uses incidental thereto. Such travel may be for either business or pleasure. . . . The use of highways for purposes of travel and transportation is not a mere privilege, but a common and fundamental right, of which the public and individuals cannot rightfully be deprived. . . . [A]ll persons have an equal right to use them for purposes of travel by proper means, and with due regard for the corresponding rights of others.' (25 Am.Jur. 456-457, § 163; see also 40 C.J.S. 244-247, § 233.)"

Petitioner contends that it is a denial of equal protection of the laws for the city to grant to one taxicab company the

exclusive right to use a portion of a public street. In my opinion the contention is meritorious.

The business of operating taxicabs on the streets of a municipality is a municipal affair, subject to regulation by the municipality under its police power although such regulations may not contravene or conflict with the general laws of the state (*Grier* v. *Ferrant*, 62 Cal.App.2d 306, 315 [144 P.2d 631]; 35 Cal.Jur.2d 81). Such regulation by ordinance adopted by municipalities is expressly authorized by section 11, article XI, of the Constitution of this state (*Grier* v. *Ferrant, supra,* 62 Cal.App.2d 306, 315). The section of the Constitution that authorizes cities to make and enforce "local, police, sanitary, and other regulations" does not, of course, confer on cities the power to pass unreasonable ordinances or ordinances in violation of the due process and equal protection clauses of the state and federal Constitutions. Enactment of arbitrary and discriminatory regulations may not be sustained under the guise of police power (*Justesen's Food Stores, Inc.* v. *City of Tulare,* 12 Cal.2d 324, 329 [84 P.2d 140]; *La Franchi* v. *City of Santa Rosa,* 8 Cal.2d 331, 336 [65 P.2d 1301, 110 A.L.R. 639]).

"The equal protection clause of the fourteenth amendment makes but one demand upon the state, and gives to the state but one right. It is that the state shall make, execute, and interpret its laws without discrimination. It must not grant rights to one which, under similar circumstances, it denies to another." (*Title Guarantee & Trust Co.* v. *Garrott,* 42 Cal. App. 152, 155 [183 P. 470].) A statute, or ordinance (*In re Blois,* 179 Cal. 291 [176 P. 449]) meets the constitutional requirements of equal protection if it relates to and operates uniformly on the whole of a single class properly selected. (*Sawyer* v. *Barbour,* 142 Cal.App.2d 827, 838 [300 P.2d 187]; *Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 620, 639, 640 [91 P.2d 577]; *Ray* v. *Parker,* 15 Cal.2d 275, 283 [101 P.2d 665].) A law which subjects to equal burdens persons similarly situated with respect to that law is an equal law (*Watson* v. *Division of Motor Vehicles,* 212 Cal. 279, 284 [298 P. 481]; *Sawyer* v. *Barbour,* 142 Cal.App.2d 827, 838 [300 P.2d 187]). In the Watson case, this court said: "So long as the statute does not permit one to exercise the privilege while refusing it to another of like qualifications, under like conditions and circumstances, it is unobjectionable upon" the ground of inequality. And it was held in *Sawyer* v. *Barbour, supra,* 142 Cal.App.2d 827, 838, that a law was

"special" within the constitutional prohibition (Cal. Const., art. I, § 21) *if it confers particular privileges or imposes peculiar disabilities or burdensome conditions in the exercise of a common right on a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law.* (*Serve Yourself Gas Stations Assn.* v. *Brock,* 39 Cal.2d 813, 820 [249 P.2d 545] ; *City of Pasadena* v. *Stimson,* 91 Cal. 238, 251-252 [27 P. 604].) (See also *Truax* v. *Raich,* 239 U.S. 33 [36 S.Ct. 7, 60 L.Ed. 131] ; *Yick Wo* v. *Hopkins,* 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220] ; *Wong Wing* v. *United States,* 163 U.S. 228 [16 S.Ct. 977, 41 L.Ed. 140] ; *United States* v. *Wong Kim Ark,* 169 U.S. 649 [18 S.Ct. 456, 42 L.Ed. 890] ; *Takahashi* v. *Fish & Game Com.,* 334 U.S. 410, 420 [68 S.Ct. 1138, 92 L.Ed. 1478] ; *Hurd* v. *Hodge,* 334 U.S. 24 [68 S.Ct. 847, 92 L.Ed. 1187].) In the Takahashi case, the Supreme Court of the United States said that "The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide 'in any state' on an equality of legal privileges with all citizens under nondiscriminatory laws."

It is a matter of common knowledge that in the city of San Francisco every major hotel and every major shop and department store has a parking stand exclusively devoted to Yellow Cabs. Although other cabs are permitted to discharge passengers at those points when the passengers have signified and made known their destination, it is also a matter of common knowledge that customers desiring a taxicab are not permitted to take an independent taxicab if Yellow cabs are waiting there unoccupied. This practice is particularly obnoxious to one's sense of fair play. It is of course quite obvious that the largest taxicab company has the greatest financial resources and is able to pay more for the "consent" of the abutting owner. In the majority opinion it is stated that "The presence of a taxicab stand in front of private property may be desired by some (e.g., hotel owners) and considered objectionable by others (e.g., home owners). . . ." This, of course, is quite true and quite obvious. Quite as true and as obvious is the fact that any owner of any hotel or department store desires to obtain as great a financial remuneration for his "consent" as the tariff will bear! The holding of the majority puts a premium on financial worth and is designed to freeze out the smaller independent companies. It is my opinion that as long as San Francisco is an "open" city so

far as taxicab companies are concerned as distinguished from the city of Los Angeles where only one taxicab company operates, the privileges extended for the use of the streets for parking stands must be equally available, in fact as well as in law, to all those standing in the same position.

Although every intendment is indulged in favor of a regulation passed by the legislative body, where the regulation has no just relation to the object sought to be accomplished and no reasonable tendency to preserve or protect the public safety, health, comfort, or morals and where the ordinance is unreasonable in its application to the complaining party, it will be held to be in violation of constitutional restrictions (*Ex parte Quong Wo,* 161 Cal. 220, 230 [118 P. 714] ; *Magruder* v. *City of Redwood,* 203 Cal. 665, 672 [265 P. 806]).

Bearing in mind the above-mentioned rules, an examination of the ordinance in question shows that, upon application, permits are issued to taxicab companies which grant to each company the *exclusive* right to use a certain portion of the public streets. All duly licensed taxicab companies fall within the same class and must, according to the constitutional mandate, be accorded equal protection. No one company may be given "particular privileges" while another is discriminated against in the way of location of stands for its cabs. This precise question was considered in *City & County of Denver* v. *Publix Cab Co.,* 135 Colo. 132 [308 P.2d 1016, 1020], where the Supreme Court of Colorado said: "Although under our laws a city may properly designate areas in which street railways or public utilities may operate, it cannot grant an exclusive license to one part of the city's streets to one taxicab company and deny the same to others lawfully operating within its corporate limits. Each class of licenses or permits for particular uses of highways, to be valid, must be general and impartial in their operations." In the case at bar, Yellow Cab Company would have the same right to object, on constitutional grounds, to the exclusive use of the portions of the public streets allocated to other cab companies. *The public streets are for the use of the public as a whole,* and while the orderly control of traffic may make it necessary for the city, in the exercise of its police power, to set aside certain designated areas of the streets for taxi stands, those stands should be open to the use of all those "who stand in precisely the same relation to the subject of the law." (*Sawyer* v. *Barbour,* 142 Cal.App.2d 827, 838 [300 P.2d 187].) *The ordinance here involved provides, in effect, for exclusive parking*

*privileges for certain segments of a class as against other members of that class.* Such a regulation has no reasonable tendency to preserve, or protect, the public health, safety or welfare and must fail because it does not operate uniformly on the whole of a single class properly selected (*Sawyer* v. *Barbour,* 142 Cal.App.2d 827, 838 [300 P.2d 187]).

Those concurring in the majority opinion appear to be impressed with the argument that only by the use of ''exclusive,'' as distinguished from ''open'' stands, will the orderly administration of traffic, service to the public, and ''good relations with the permittees'' be maintained. Another argument subscribed to by the majority is that only a taxicab company sufficiently affluent to maintain a telephone connection can furnish ''constant cab service at the stand, without an excessive supply of cabs at some times and a dearth at others.'' All of these arguments are so easily met and the answers are so obvious that it seems unnecessary to engage in any extended discussion of them here. It seems obvious that the stands could be so regulated that only a certain number of cabs could stand there at any one time; that the cab first in line would take the first customer and the others thereafter moved up in line allowing another cab to take its place at the end of the line. It should be noted that as a matter of fact this is precisely the way the Yellow Cab Company operates its ''exclusive'' stands. It is also a matter of common knowledge that all taxicabs are now radio-controlled, or operated, so that the driver may be called to pick up passengers at any given point. It is ridiculous to say, as does the majority opinion, that ''Exclusive stands may facilitate police supervision and may prevent disorderly and aggressive solicitation of one customer by drivers of different taxicab owners.'' Inasmuch as each individual taxicab, whether owned by one company or another, charges the legal fare and since all are equipped with meters, there could be no more aggressive solicitation of customers if differently owned cabs were allowed to use the one stand than if all the cabs using it were owned by one company under the system outlined above. As a matter of fact, it appears to me that taxicab service would be facilitated, rather than hindered, if all stands were ''open'' ones. I am sure that every taxicab user has had the experience of waiting patiently for a Yellow taxicab at one of the major hotels after a large event of some type had concluded. If cabs of other companies were permitted to use the present exclusive stands, service would be bettered.

It is argued by amicus curiae Yellow Cab Company that the designation of exclusive cab stands is a proper exercise of the police power in that it aids in the identification of drivers guilty of offenses, aids in the maintenance of discipline at the stands, and aids in the maintenance of continuous service at the stands. It is also argued that police problems are minimized, cruising by cabs is lessened thus aiding in solving the traffic problem; that the abutting landowner is "assured of peace of mind in being free of boisterous and objectionable behavior by drivers and litter"; that the abutting landowner is assured of good cab service for his patrons. These arguments fail to convince. They assume that only by segregation of the various cab companies can the public peace, welfare and convenience be served. There can surely be no assumption that only the drivers for one company will not cause litter on the public streets, or not be guilty of boisterous conduct, or fail to provide service to the public, or be guilty of overcharge, or other unlawful conduct. *All taxicabs are required to be distinctively marked, and presumably all drivers for all companies possess the required qualifications and have been duly licensed as required by law.* It is difficult to see how open taxi stands would have any deleterious effect insofar as police problems are concerned. The companies retain control of their drivers, the number of cabs at any one stand at one time is a matter readily capable of regulation, and it would appear that open cab stands would have no effect whatsoever insofar as the cruising problem is concerned. As a matter of fact the so-called "cruising taxicab" is the prospective customer's only hope during rush hours when all the exclusive Yellow Cab stands are completely unoccupied. Again, the traffic problem, service to the public, and the orderly use of the public streets, would be facilitated, rather than hindered, if unoccupied taxicabs of other companies were permitted to stand in the vacant stands set aside for the exclusive use of the Yellow Cab Company.

As has been heretofore set forth all taxicabs fall within one class and any legislation affecting that class must operate equally upon members of the class.

Amicus curiae also contends that the use of the public streets for private gain is a matter of privilege and not of right and that such privilege may be prohibited or regulated in the public interest. The contention is, of course, meritorious. But when the privilege is granted, it must be granted on equal terms to all within the class to which it is granted. In

*Smith* v. *Smith,* 125 Cal.App.2d 154, 169 [270 P.2d 613], the court said : ''The equal protection clause does not preclude the states from resorting to classification, but only requires that the classification be reasonable, not arbitrary, and rest on some ground of difference having a fair and substantial relation to the object of the legislation *so that all persons similarly situated will be treated alike.* (*Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.,* 299 U.S. 183 [57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476].)'' (Emphasis added.)

It is no answer to the constitutional objection to the ordinance that the abutting owner must consent to the permittee's use of the street for a taxicab stand. An abutting landowner retains only the right of ingress and egress to his property. In *Bacich* v. *Board of Control,* 23 Cal.2d 343, 349, 350 [144 P.2d 818], we held that the ''owner of property abutting upon a public street has a property right in the nature of an easement in the street which is appurtenant to his abutting property and which is his private right, as distinguished from his right as a member of the public. That right has been described as an easement of ingress and egress to and from his property. . . .'' Amicus curiae argues that the abutting owner has the right to ''waive'' his ingress and egress rights as to certain taxicabs and that waiving it as to one company is not a waiver as to all companies. This contention was answered adversely in *Donovan* v. *Pennsylvania Co.,* 199 U.S. 279, 303 [26 S.Ct. 91, 50 L.Ed. 192], where the court said : ''But the right of the railroad company, as abutting owner and the rights of passengers are not, in their nature, paramount to the rights of others of the general public to use the sidewalk in question in legitimate ways and for legitimate purposes. Licensed hackmen and cabmen, unless forbidden by valid local regulations, may, within reasonable limits, use a public sidewalk in prosecuting their calling, provided such use is not materially obstructive in its nature, that is, of such exclusive character as, in a substantial sense, to prevent others from also using it upon equal terms for legitimate purposes. Generally speaking, public sidewalks and streets are for use by all, upon equal terms, for any purpose consistent with the object for which such sidewalks and streets are established ; subject of course to such valid regulations as may be prescribed by the constituted authorities for the public convenience ; this, to the end that, as far as possible, the rights of all may be conserved without undue discrimination.''

It is conceded that the municipality has the paramount

right to regulate the use of the streets in a reasonable manner. It is argued, however, that the abutting landowner has rights paramount to those of the general public, particularly a segment of the public seeking to make use of the streets for private gain. These arguments appear to lose sight of the fact that the abutting landowner has only his *personal* right of ingress and egress. If the municipality chooses to create public transportation stands in the interest of the public health, welfare and safety the *only* right the abutting property owner has is that such stands do not interfere with that right of ingress and egress. *It is not within the power of an abutting owner to confer special privileges upon those who are entitled to use the streets only upon equal terms with others similarly situated.* We held in *People* v. *Russell,* 48 Cal.2d 189, 195 [309 P.2d 10], that "An abutter's easement of access arises as a matter of law (*Rose* v. *State,* 19 Cal.2d 713 [123 P.2d 505]). It is a property right enjoyed by the abutter as an incident of his ownership of property, and is separate and distinct from the right of the general public in and to the street. While certain general rules have been set forth in the various decisions which have considered the nature and scope of this right, each case must be considered upon its own facts. The right of access has been defined as extending to a use of the road for purposes of ingress and egress to his property by such modes of conveyance and travel as are appropriate to the highway and in such manner as is customary or reasonable. (*Rose* v. *State, supra,* 19 Cal.2d 713, 728.) It is more extensive than a mere opportunity to go into the street immediately in front of one's property. (*Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818].) However it does not extend beyond access to the next intersection at either end of the street upon which the property abuts. (*Beckham* v. *City of Stockton,* 64 Cal.App.2d 487 [149 P.2d 296].) Any inconveniences which may be suffered after such intersection is reached do not impair the easement but are inconveniences suffered by him as a member of the public." We were not concerned with whether the abutter had the *exclusive* right to the public street abutting his property to the intersection. If I were to concur in the reasoning used by amicus curiae and the majority, I would be agreeing that the abutter had the exclusive right, even as against the municipality, to decide who would use the parking area in the public streets in front of his property to the intersection at either end thereof. It will

be noted that the Russell case specifically stated that the abutter's rights did "not extend beyond *access* to the next intersection at either end of the street upon which the property abuts."

The majority agrees with the contention of the People that a determination as to whether or not closed taxicabs stands are in the public interest is a legislative matter. Reliance is placed on the case of *People* v. *Galena,* 24 Cal.App.2d Supp. 770 [70 P.2d 724], wherein the same type of ordinance was held constitutional and that the equal protection clause was not violated. In the Galena case, the city of San Francisco had granted an exclusive cab stand on a public street to Yellow Cab Company. The driver of a Luxor Cab was arrested for standing his cab in that stand, and the appellate department of the superior court affirmed the judgment of conviction of violation of the ordinance. While the Galena case involved approximately the same ordinance as the one under consideration, it is, of course, not binding on this court. When the question arises in a proper case it is the province of the judicial department of this state to finally determine the constitutionality of the judgment of the legislative body. This court should not be concerned with the policy of the legislative body, but with the constitutionality of the enactment.

Petitioner also contends that the ordinance is unconstitutional in that it confers unlimited discretion upon the Chief of Police in both granting the permits for taxicab stands and the revocation of such permits. There is no standard set forth to guide the Chief of Police in granting the permit and any permit so granted may be revoked "at his pleasure." "It is the function of the Legislature to declare a policy and fix the primary standard. To promote the purposes of the legislation and carry it into effect, the authorized administrative or ministerial officer may 'fill up the details' by prescribing administrative rules and regulations (*First Industrial Loan Co.* v. *Daugherty,* 26 Cal.2d 545, 549 [159 P.2d 921]), but as so empowered, he may not 'vary or enlarge the terms or conditions of [the] legislative enactment' (*Boone* v. *Kingsbury,* 206 Cal. 148, 161 [273 P. 797]; also *Whitcomb Hotel, Inc.* v. *California Emp. Com.,* 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405]) or 'compel that to be done which lies without the scope of the statute.' (*First Industrial Loan Co.* v. *Daugherty, supra,* p. 550.)" (*Knudsen Creamery Co.* v. *Brock,* 37 Cal.2d 485, 492, 493 [234 P.2d 26].) And "While the delegation of governmental authority to an administrative

body is proper in some instances, the delegation of absolute legislative discretion is not. To avoid such a result it is necessary that a delegating statute establish an ascertainable standard to guide the administrative body.'' (*State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners, Inc.*, 40 Cal.2d 436, 448 [254 P.2d 29].) In *Franchise Tax Board* v. *Superior Court*, 36 Cal.2d 538, 548 [225 P.2d 905], we said: "It is well established that a legislative body may delegate to a board or officer the discretion of carrying out a declared policy *according to a prescribed test or standard*. It is not necessary that the Legislature '. . . find for itself every fact upon which it desires to base legislative action or that it make for itself detailed determinations which it has declared to be prerequisite to the application of the legislative policy to particular facts and circumstances. . . . These essentials are preserved when . . . [the legislative body] has specified the basic conditions of fact upon whose existence or occurrence, ascertained from relevant data by a designated administrative agency, it directs that its statutory command shall be effective.' (*Yakus* v. *United States*, 321 U.S. 414, 424-425 [64 S.Ct. 660, 88 L.Ed. 834]; accord *Bi-Metalic Inv. Co.* v. *State Board of Equalization*, 239 U.S. 441 [36 S.Ct. 141, 60 L.Ed. 372]; *Field & Co.* v. *Clark*, 143 U.S. 649 [12 S.Ct. 495, 36 L.Ed. 294].)'' A reading of the ordinance involved shows that no basic conditions or facts are set forth to guide the Chief of Police; that his discretion is absolutely undefined and unlimited both as to granting and revoking the permits for taxicab stands. It has been held that the legislative body must declare the policy of the law and fix some kind of legal principles which are to control in given cases. It must provide an adequate yardstick for the guidance of the executive or administrative body or officer empowered to execute the law. (*Blatz Brewing Co.* v. *Collins*, 69 Cal.App.2d 639, 645 [160 P.2d 37]; *Schaezlein* v. *Cabaniss*, 135 Cal. 466 [67 P. 755, 87 Am. St.Rep. 122, 56 L.R.A. 733].)

The ordinance involved here constitutes special legislation in violation of the Fourteenth Amendment to the Constitution of the United States which provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. The equal protection clause applies to all departments of state government (*People* v. *Hines*, 12 Cal.2d 535 [86 P.2d 92]; *Brock* v. *Superior Court*, 12 Cal.2d 605 [86 P.2d 805]; *Ex parte Virginia*, 100 U.S. 339 [25 L.Ed. 676]; *Yick Wo* v. *Hopkins*, 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed.

220]; *Lane* v. *Wilson*, 307 U.S. 268 [59 S.Ct. 872, 83 L.Ed. 1281]). There must be no partial or hostile discrimination against class or person. The equal protection clause stands in the Constitution as a perpetual shield against all unequal or partial legislation by the state and the injustice which flows from it. (*Railroad Tax Cases*, 13 F. 722 [8 Sawy. 238].) As the Supreme Court of the United States said in *Yick Wo* v. *Hopkins*, 118 U.S. 356, 373, 374 [6 S.Ct. 1064, 30 L.Ed. 220], "[T]he facts shown establish an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion, that, whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the State itself, with a mind so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the Fourteenth Amendment to the Constitution of the United States. Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances material to their rights, the denial of equal justice is still within the prohibition of the Constitution." (And see *Chy Lung* v. *Freeman*, 92 U.S. 275 [23 L.Ed. 550]; *Ex parte Virginia*, 100 U.S. 339 [25 L.Ed. 676]; *Neal* v. *Delaware*, 103 U.S. 370 [26 L.Ed. 567].)

Article I, section 21, of the California Constitution provides that "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature, nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens." (See also art. IV, § 25, subd. 33; art. I, § 11.) This section applies to and constitutes a restraint upon boards of supervisors of counties (*In re Blois*, 179 Cal. 291 [176 P. 449]; *Acton* v. *Henderson*, 150 Cal.App. 2d 1, 18 [309 P.2d 481]). It has also been construed to mean "equal burden" as well as "equal privileges." (*Watson* v. *Division of Motor Vehicles*, 212 Cal. 279 [298 P. 481]; *Sawyer* v. *Barbour*, 142 Cal.App.2d 827 [300 P.2d 187]; *City of Tulare* v. *Hevren*, 126 Cal. 226 [58 P. 530].) It was the object of the framers of the Constitution to prevent vicious legislation for private ends which might be passed in an apparently

harmless provision of a local or private statute (*Bruch* v. *Colombet,* 104 Cal. 347 [38 P. 45]; *City of Tulare* v. *Hevren,* 126 Cal. 226 [58 P. 530].) A law which applies only to part of a class is held to be special and within the constitutional prohibition (*McDonald* v. *Conniff,* 99 Cal. 386 [34 P. 71]; *City of Pasadena* v. *Stimson,* 91 Cal. 238 [27 P. 604]; *Lelande* v. *Lowery,* 26 Cal.2d 224 [157 P.2d 639, 175 A.L.R. 1109]; *Serve Yourself Gas Stations Assn.* v. *Brock,* 39 Cal.2d 813 [249 P.2d 545]; *Brock* v. *Superior Court,* 12 Cal.2d 605 [86 P.2d 805]).

In order to avoid the fact that the legislation here in question fixes no standard to guide the administrative officer, the majority rely upon *Parker* v. *Colburn,* 196 Cal. 169 [236 P. 921], which involved a permit to erect and maintain a public garage in the city of Oakland. It was held that because a garage had a tendency to increase the fire hazard, it was within the police power to refuse a permit for the construction thereof. The case did not involve the granting of a permit for the construction of a garage when, under like circumstances, it was granted to another, and the ordinance involved and specifically mentioned three "classes" of garages which were defined. A class "C" garage was not more than "one story high and [which had] a cement floor" was involved in the case. A standard to guide the administrative officer was therefore set forth. In *In re Holmes,* 187 Cal. 640 [203 P. 398], the ordinance provided that the chief of police should have general police inspection powers over those dealing in "second-hand merchandise" among other enumerated articles. The appellant contended that a person dealing in second-hand books did not come within the terms of the ordinance. The ordinance required one dealing in such second-hand merchandise to obtain a permit for the sale thereof. The case did not involve the granting of a permit to one when it was denied to another. And the case stands merely for the proposition that the term "merchandise" includes "books" and that the regulation of the sale of such second-hand books is a lawful exercise of the police power. *Ex parte Christensen,* 85 Cal. 208 [24 P. 747], involved the granting, or refusal, of a license to sell liquor. It is not in point inasmuch as it was there held that if a governing power could prohibit something altogether it could impose such conditions as it saw fit. This does not mean that, under the same conditions, it could prohibit the issuance of a license to one in the same class while granting such a license to another of a like class. In any event, the

ordinance there involved provided for the following alternative: That in the event a majority of the board of police commissioners refused to grant a permit for the issuance of such a license, the applicant could procure the consent of twelve citizens who owned real estate in the area, and a license was thereupon issued to him. *Ex parte Fiske,* 72 Cal. 125 [13 P. 310], involved an ordinance prohibiting the alteration, repair, or construction of any wooden building within certain prescribed fire limits without permission in writing signed by a majority of the firewardens and approved by a majority of the committee on fire department and the mayor. The court quoted from *Yick Wo* v. *Hopkins,* 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220], and noted, specifically, that the ordinance did not discriminate against persons within a certain class but operated equally on all within the class. The ordinance singled out *wooden* buildings—not all buildings. In other words, ''wooden'' buildings constituted the class. Other cases cited in the majority opinion fall within the same general classification and are not in point here. *The ordinance here involved operates unequally on all within a class.* There is *nothing* to guide the chief of police in his designation of which company shall occupy which taxicab stand. As I have heretofore noted, all taxicab companies must be licensed; all the drivers for such companies must be licensed and are required to pass an examination prior thereto. There is absolutely no legal basis on which to favor one company over another and yet it is very apparent that one member of the same class has been favored over all others of the same class.

It is obvious that the ordinance does not satisfy the requirements set forth in the preceding citations of authority and should, therefore, be held void for the additional reason that it constitutes an unconstitutional delegation of legislative discretion to an administrative officer.

For the foregoing reasons I would discharge the prisoner.

Respondent's petition for a rehearing was denied November 26, 1958.