Filed 4/6/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DELANO FARMS COMPANY et. al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CALIFORNIA TABLE GRAPE COMMISSION,<br><br>Defendant and Respondent. | F067956<br><br>(Super. Ct. Nos. 636636-3 (Lead), 642546, 01CECG01127, 01CECG02292, 01CECG02289 & 11CECG00178)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Donald S. Black, Judge.

Brian C. Leighton; Sagaser, Watkins & Wieland and Howard A. Sagaser for Plaintiffs and Appellants.

Baker, Manock & Jensen, Robert D. Wilkinson; Wilmer Cutler Pickering Hale and Dorr, Seth P. Waxman, Brian M. Boynton, Thomas G. Saunders and Francesco Valentini for Defendant and Respondent.

-ooOoo-

Appellants, Delano Farms Company, Four Star Fruit, Inc., Gerawan Farming, Inc., Bidart Bros. and Blanc Vineyards, LLC, challenge the constitutionality of the statutory

scheme that establishes respondent, the California Table Grape Commission (Commission), and requires table grape growers and packers to fund the Commission's promotional activities. Appellants assert that being compelled to fund the Commission's generic advertising violates their rights to free speech, free association, due process, liberty and privacy under the California Constitution.

The trial court granted summary judgment in the Commission's favor. The court held that the Commission is a "governmental entity" and thus its speech is government speech that can be funded with compelled assessments. Alternatively, the trial court applied the intermediate scrutiny test set forth in *Gerawan Farming, Inc. v. Kawamura* (2004) 33 Cal.4th 1, 22, and concluded that the compelled funding scheme did not violate the California Constitution.

Appellants contend the trial court erred in granting summary judgment. According to appellants, facts relied on by the Commission to demonstrate that the funding scheme passed constitutional muster under intermediate scrutiny were not proved by admissible evidence and are in dispute. Appellants further argue the court erred in finding the speech was government speech because the Commission did not demonstrate either that the Commission is a government entity or that the government controlled the Commission's activities and speech.

The Commission's promotional activities constitute government speech. Accordingly, we will affirm the trial court's grant of summary judgment on this ground.

## BACKGROUND

### 1. *The Table Grape Commission.*

The Commission was created by legislation known as the Ketchum Act in 1967. (Food & Agr. Code,[1] § 65500 et seq.; *United Farm Workers of America v. Agricultural*

---

[1] All further statutory references are to the Food and Agricultural Code unless otherwise noted.

2.

*Labor Relations Bd.* (1995) 41 Cal.App.4th 303, 312.) The Legislature explained that "[g]rapes produced in California for fresh human consumption comprise one of the major agricultural crops of California, and the production and marketing of such grapes affects the economy, welfare, standard of living and health of a large number of citizens residing in this state." (§ 65500, subd. (a).) Noting that individual producers are unable to maintain or expand present markets or develop new markets resulting in "an unreasonable and unnecessary economic waste of the agricultural wealth of this state," the Ketchum Act declared it was the policy of the state to aid producers of California fresh grapes. (§ 65500, subds. (c) & (g).) To carry out this policy, the Commission supports the fresh grape industry through advertising, marketing, education, research, and government relations efforts. (§ 65572, subds. (h), (i) & (k).) The Commission's duties are set forth in the legislation.

The Commission's work is funded primarily by assessments imposed on all shipments of California table grapes as required by the Ketchum Act. The Commission determines the amount of the assessment based on what is reasonably necessary to pay its obligations and to carry out the objects and purposes of the Ketchum Act, not to exceed a statutory amount per pound. (§ 65600.) These assessments are paid by shippers who are authorized to collect the assessments from the growers. (§§ 65604, 65605.)

The Commission's governing board is composed of 18 growers representing California's six currently active table grape growing districts and one non-grower "public member." (§§ 65550, 65553, 65575.1.)

The California Department of Food and Agriculture (CDFA) and the Secretary of the CDFA (Secretary) retain authority over the Commission's activities through a few key functions. (*Delano Farms Co. v. California Table Grape Comm'n* (9th Cir. 2009) 586 F.3d 1219, 1221 (*Delano Farms*).) The CDFA oversees the nomination and selection of producers eligible to be appointed to the Commission board. (§§ 65559, 65559.5, 65560, 65562, 65563.) The Secretary not only appoints, but may also remove,

3.

every member of the Commission.  (§§ 65550, 65575.1; *Delano Farms, supra,* 586 F.3d at p. 1221.)  Further, the Secretary has the power to reverse any Commission action upon an appeal by a person aggrieved by such action.  (§ 65650.5.)  Additionally, the Commission's books, records and accounts of all of its dealings are open to inspection and audit by the CDFA and the California Department of Finance.  (§ 65572, subd. (f).)

The CDFA provides information and instructions to the Commission regarding marketing orders each month through the CDFA's "Marketing Memo."  The CDFA also retains the authority to review the Commission's advertising.  In its policy manual, the CDFA expressly "reserves the right to exercise exceptional review of advertising and promotion messages wherever it deems such review is warranted.  This may include intervention in message development prior to placement of messages in a commercial medium or venue."  (Cal. Department of Food and Agriculture, Policies for Marketing Programs (4th ed. 2006) p. C-3.)

Moreover, as with other state government entities, the Commission is subject to the transparency, auditing and ethics regulations designed to promote public accountability.  (*Delano Farms, supra,* 586 F.3d at p. 1221.)

## 2.     *The underlying actions.*

Appellants object to being required to pay assessments to fund the Commission's activities.  They seek a judgment "declaring that the statutes establishing the Commission and defining its alleged authority, are unconstitutional in that they violate [appellants'] rights guaranteed under the Free Speech and Free Association Clauses of the California Constitution."  Appellants further allege that the law establishing the Commission exceeds the state's police power.

Appellants filed their original complaints between 1999 and 2001.  These actions were stayed or dormant while the parties awaited decisions in a number of state and federal cases involving similar claims.  The parties filed amended complaints in 2011 and the cases were consolidated.

The Commission moved for summary judgment. The Commission argued that appellants' free speech and association claims were barred because the Commission's speech activities constitute government speech. Alternatively, the Commission asserted appellants' free speech and association claims were barred because the Ketchum Act satisfies intermediate scrutiny. Finally, the Commission argued that appellants' police power claims failed under the rational basis standard of review.

The trial court granted summary judgment in the Commission's favor. The court concluded that the Commission is a government entity and thus the government speech defense was established. The court did not rule on the Commission's alternative claim that the Commission's speech is government speech because it is controlled by the CDFA. The court further found that the Ketchum Act survives both intermediate scrutiny and rational basis review.

## DISCUSSION

### 1. *Standard of review.*

A party moving for summary judgment bears the burden of persuading the trial court that there is no triable issue of material fact and that it is entitled to judgment as a matter of law. (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525 (*Brown*).) Once the moving party meets this initial burden, the burden shifts to the opposing party to establish, through competent and admissible evidence, that a triable issue of material fact still remains. If the moving party establishes the right to the entry of judgment as a matter of law, summary judgment will be granted. (*Ibid.*)

On appeal, the reviewing court must assume the role of the trial court and reassess the merits of the motion. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601.) The appellate court applies the same legal standard as the trial court to determine whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law. The court must determine whether the moving party's showing satisfies its burden of proof and justifies a judgment in the moving party's favor.

(*Brown, supra,* 171 Cal.App.4th at p. 526.)  In doing so, the appellate court must view the evidence and the reasonable inferences therefrom in the light most favorable to the party opposing the summary judgment motion.  (*Essex Ins. Co. v. Heck* (2010) 186 Cal.App.4th 1513, 1522.)  If summary judgment is correct on any of the grounds asserted in the trial court, the appellate court must affirm, regardless of the trial court's stated reasons.  (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181.)

**2.      *The constitutional validity of generic advertising assessments.***

The United States Supreme Court provided the foundation for the law on the constitutional validity of compulsory fees used to fund speech in *Abood v. Detroit Board of Education* (1977) 431 U.S. 209 (*Abood*) and *Keller v. State Bar of California* (1990) 496 U.S. 1 (*Keller*).  In *Abood* and *Keller*, the court "invalidated the use of the compulsory fees to fund union and bar speech, respectively, on political matters not germane to the regulatory interests that justified compelled membership." (*Gallo Cattle Co. v. Kawamura* (2008) 159 Cal.App.4th 948, 955-956 (*Gallo Cattle*).)  Thereafter, both the United States Supreme Court and the California Supreme Court applied these precedents to generic commodity advertising funded by compulsory fees.

In *Glickman v. Wileman Brothers & Elliott, Inc.* (1997) 521 U.S. 457 (*Glickman*), the United States Supreme Court considered the compulsory subsidy of commodity advertising for the first time.  The *Glickman* majority found that compulsory fees for generic advertising under a federal marketing order that regulated California grown nectarines, peaches, pears and plums did not violate the First Amendment. (*Glickman, supra,* 521 U.S. at pp. 472-473.)  The majority noted that this generic advertising was unquestionably germane to the purposes of the marketing orders.  Further, the assessments were not used to fund ideological activities. (*Id*. at p. 472.)  The court reasoned that it was reviewing "a species of economic regulation that should enjoy the same strong presumption of validity" that is accorded "to other policy judgments made by Congress." (*Id*. at p. 477.)

When faced with a program very similar to the one at issue in *Glickman*, the California Supreme Court reached a different conclusion when it applied the California Constitution. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468 (*Gerawan I*).) Noting that article I's free speech clause is broader and greater than the First Amendment, the *Gerawan I* court concluded that the California Plum Marketing Agreement's compelled funding of generic advertising implicated the plaintiff's right to freedom of speech under article I. (*Gerawan I, supra,* 24 Cal.4th at pp. 491, 517.) However, this holding did not conclude the case. "That the California Plum Marketing Program implicates Gerawan's right to freedom of speech under article I does not mean that it violates such right." (*Id*. at p. 517.) The court explained that there remained the questions of what test is appropriate for use in determining a violation and what precise protection does article I afford commercial speech. (*Ibid.*) Accordingly, the court remanded the matter to the Court of Appeal to address these questions. The court did not consider "[w]hether, and how, article I's free speech clause may accommodate government speech" because the issue was not timely raised. (*Id*. at p. 515, fn 13.)

The case returned to the California Supreme Court in *Gerawan Farming, Inc. v. Kawamura* (2004) 33 Cal.4th 1 (*Gerawan II*). However, in the interim, the United States Supreme Court decided *United States v. United Foods, Inc.* (2001) 533 U.S. 405 (*United Foods*).

In *United Foods*, the court considered the constitutional validity of a program that imposed mandatory assessments on handlers of fresh mushrooms. In practice, these assessments were spent almost exclusively on generic advertising to promote mushroom sales. The court concluded that compelled funding of commercial speech must pass First Amendment scrutiny. (*United Foods, supra,* 533 U.S. at p. 411.) Applying the rule in *Abood* and *Keller*, the court invalidated the mandatory assessments. Although *Abood* and *Keller* would permit the assessment if it were "germane to the larger regulatory purpose" (*id.* at p. 414) that justified the required association, the only regulatory purpose of the

7.

mushroom program was funding the advertising scheme in question. (*Id*. at pp. 414-415.) The court distinguished *Glickman* on the ground that in *Glickman* the "compelled contributions for advertising were 'part of a far broader regulatory system that does not principally concern speech.'" (*Id*. at p. 415.) Although the government argued that the advertising was immune from scrutiny because it was government speech, the court declined to consider the claim because it was untimely. (*Id*. at pp. 416-417.)

In *Gerawan II* the California Supreme Court held that, under the California Constitution, compelled funding of generic advertising should be tested by the intermediate scrutiny standard articulated by the United States Supreme Court in *Central Hudson Gas & Elec. v. Public Serv. Comm'n* (1980) 447 U.S. 557. (*Gerawan II, supra,* 33 Cal.4th at p. 22.) The court noted that, despite the United States Supreme Court's holding in *Glickman*, *United Foods* seemed to be in agreement with *Gerawan I*. The *Gerawan II* court described *United Foods* as holding "that the compelled funding of commercial speech does not violate the First Amendment *if* it is part of a larger marketing program, such as was the case in *Glickman*, and *if* the speech is germane to the purpose of the program. But that being the case, compelled funding of commercial speech must be said to implicate the First Amendment, i.e., such compelled funding requires a particular constitutional inquiry along the lines of *Abood* and its progeny." (*Gerawan II, supra,* 33 Cal.4th at p. 17.) As to the Secretary's government speech claim, the *Gerawan II* court concluded that it could not be resolved on the pleadings and required further factfinding. (*Id*. at p. 28.)

**3.** ***Compelled generic advertising as government speech.***

In *Johanns v. Livestock Marketing Assn.* (2005) 544 U.S. 550 (*Johanns*), the United States Supreme Court directly addressed, for the first time, the government speech argument that had been raised in both *Glickman* and *United Foods.* The court described the dispositive question as "whether the generic advertising at issue is the Government's own speech and therefore is exempt from *First Amendment* scrutiny." (*Johanns, supra,*

544 U.S. at p. 553.) This case arose under the Beef Promotion and Research Act (Beef Act).

The *Johanns* majority delineated two categories of cases where First Amendment challenges to allegedly compelled expression have been sustained: "true 'compelled-speech' cases, in which an individual is obliged personally to express a message he disagrees with, imposed by the government; and 'compelled-subsidy' cases, in which an individual is required by the government to subsidize a message he disagrees with, expressed by a private entity." (*Johanns, supra,* 544 U.S. at p. 557.) The court then noted "We have not heretofore considered the *First Amendment* consequences of government-compelled subsidy of the government's own speech." (*Ibid*.) However, the court pointed out, "'[c]ompelled support of government' -- even those programs of government one does not approve -- is of course perfectly constitutional, as every taxpayer must attest." (*Id*. at p. 559.)

The Beef Act announced a federal policy of promoting the marketing and consumption of beef. The Beef Act directs the Secretary of Agriculture to implement this policy by issuing a Beef Promotion and Research Order (Beef Order) and by appointing a Cattlemen's Beef Promotion and Research Board (Beef Board). At issue in *Johanns* were beef promotional campaigns designed by the Operating Committee of the Beef Board. These campaigns were funded by mandatory assessments on beef producers. (*Johanns, supra,* 544 U.S. at p. 553.)

The *Johanns* majority held that the beef promotional campaigns were the government's own speech. In reaching this conclusion, the court determined that the promotional campaigns' message was effectively controlled by the federal government itself. (*Johanns, supra,* 544 U.S. at p. 560.) First, Congress directed the creation of the promotional program and specified that the program should include "'paid advertising, to advance the image and desirability of beef and beef products.'" (*Id*. at p. 561.) Second, "Congress and the Secretary have also specified, in general terms, what the promotional

9.

campaigns shall contain … and what they shall not." (*Ibid*.) "Thus, Congress and the Secretary have set out the overarching message and some of its elements, and they have left the development of the remaining details to an entity whose members are answerable to the Secretary …." (*Ibid*.) Although the Secretary did not write the ad copy himself, the Secretary appointed half the members of the Operating Committee and all of the Operating Committee's members were subject to removal by the Secretary. (*Id*. at p. 560.) Additionally, all proposed promotional messages were reviewed by Department of Agriculture officials both for substance and for wording, and some proposals were rejected or rewritten by the Department. Finally, Department of Agriculture officials attended and participated in the open meetings at which proposals were developed. (*Id*. at p. 561.) Therefore, the court held, the Beef Board and the Operating Committee could rely on the government speech doctrine to preclude First Amendment scrutiny. (*Id*. at p. 562.) Finding that the promotional campaigns were effectively controlled by the government, the court declined to address whether the Operating Committee was a governmental or a nongovernmental entity. (*Id*. at p. 560, fn. 4.)

In *Gallo Cattle,* the Third District held that *Johanns* applies to the free speech clause under article I, section 2 of the California Constitution. (*Gallo Cattle, supra,* 159 Cal.App.4th at p. 955.) The *Gallo Cattle* court first noted that, in determining whether to follow the United States Supreme Court in matters concerning the free speech doctrine, the California Supreme Court has followed the reasoning set forth in *People v. Teresinski* (1982) 30 Cal.3d 822 (*Teresinski*). (*Gallo Cattle, supra,* 159 Cal.App.4th at p. 959.)

In *Teresinski*, the court explained that decisions of the United States Supreme Court "are entitled to respectful consideration [citations] and ought to be followed unless persuasive reasons are presented for taking a different course." (*Teresinski, supra,* 30 Cal.3d at p. 836.) These potentially persuasive reasons fall into four categories: (1) something in the language or history of the California provision suggests that the issue should be resolved differently than under the federal Constitution; (2) the high court

10.

opinion limits rights established by earlier precedent in a manner inconsistent with the spirit of the earlier opinion; (3) there are vigorous dissenting opinions or incisive academic criticism of the high court opinion; and (4) following the federal rule would overturn established California doctrine affording greater rights. (*Id*. at pp. 836-837.)

Applying the four *Teresinski* categories, the *Gallo Cattle* court concluded that the United States Supreme Court's reasoning in *Johanns* should be followed in California. The court determined that the language and history of the California free speech provision do not compel a different resolution from that under the federal Constitution. (*Gallo Cattle, supra,* 159 Cal.App.4th at pp. 959-961.) Further, there is no prior California holding concerning the application of the government speech doctrine. (*Id*. at p. 961.) Finally, the court found the majority's reasoning in *Johanns* to be more persuasive than the dissent.

We agree with the *Gallo Cattle* court's analysis of this issue. Accordingly, we will apply *Johanns* here.

### 4. *The Commission's speech is government speech.*

In *Delano Farms*, the Ninth Circuit analyzed the constitutional validity of the compelled funding of generic advertising levied through the Commission. The court considered both ways in which the Commission's activities could be classified as government speech, i.e., if the Commission is itself a government entity or if the Commission's message is effectively controlled by the state. The court concluded that the Commission's promotional activities constituted government speech under either avenue of classification and were therefore immune from a First Amendment challenge. (*Delano Farms, supra,* 586 F.3d at p. 1223.)

The *Delano Farms* court compared the framework of statutes governing the Commission to the scheme addressed in *Johanns*. (*Delano Farms, supra,* 586 F.3d at pp. 1227-1228.) The court first noted that the founding of the Commission, its structure, and its relationship to the State of California is strikingly similar to the beef program at issue

11.

in *Johanns*. Like the beef program in *Johanns*, the Commission was established by a legislative act. (*Delano Farms, supra,* at p. 1228.) Also similar to the beef program, the Legislature provided an overriding directive for the sorts of messages the Commission should promote. (*Ibid.*) "[T]he Legislature intends that the commissions and councils operate primarily for the purpose of creating a more receptive environment for the commodity and for the individual efforts of those persons in the industry, and thereby compliment individual, targeted, and specific activities." (§ 63901, subd. (e).)

The *Delano Farms* court observed that the California Legislature's expectations for the Commission and its messaging were much more specific than the stated objectives of the Beef Act and Beef Order discussed in *Johanns*. (*Delano Farms, supra,* 586 F.3d at p. 1228.) The Legislature directed the Commission to focus on,

> "The promotion of the sale of fresh grapes for human consumption by means of advertising, dissemination of information on the manner and means of production, and the care and effort required in the production of such grapes, the methods and care required in preparing and transporting such grapes to market, and the handling of the same in consuming markets, research respecting the health, food and dietetic value of California fresh grapes and the production, handling, transportation and marketing thereof, the dissemination of information respecting the results of such research, instruction of the wholesale and retail trade with respect to handling thereof, and the education and instruction of the general public with reference to the various varieties of California fresh grapes for human consumption, the time to use and consume each variety and the uses to which each variety should be put, the dietetic and health value thereof …."
> (§ 65500, subd. (f).)

The court concluded that the Legislature's directive went much further in defining the Commission's message than the Beef Order's general directive that the beef promotional campaigns should discuss different types of beef and should refrain from using brand names. (*Delano Farms, supra,* 586 F.3d at p. 1228.)

The *Delano Farms* court further noted that, like the Operating Committee in *Johanns*, "the Commission is tasked with developing specific messaging campaigns."

12.

(*Delano Farms, supra,* 586 F.3d at p. 1228.) Importantly, the Secretary of the CDFA has the power to appoint and remove every member of the Commission. In contrast, the U.S. Secretary of Agriculture only appoints half of the Beef Board Operating Committee members. (*Id*. at pp. 1228-1229.) Further, the state possesses additional oversight powers over the Commission. The Commission's books, records and accounts of all of its dealings are open to inspection and audit by the CDFA and the California Department of Finance.

The *Delano Farms* court acknowledged that there were some important differences between the Ketchum Act and the program considered in *Johanns*. Unlike the Beef Order, the Ketchum Act does not *require* any type of review by the Secretary over the actual messages promulgated by the Commission. The Beef Board and the Operating Committee submit all plans to the U.S. Secretary of Agriculture for final approval. (*Delano Farms, supra,* 586 F.3d at p. 1229.)

Nevertheless, although not required, the CDFA retains the authority to review the Commission's advertising. As discussed above, the CDFA reserves the right to exercise exceptional review of advertising and promotion messages wherever it deems such review is warranted. Even if the Secretary does not exercise this authority and intervene in message development, he or she does not relinquish the power to do so. (Cf. *Paramount Land Co., LP v. Cal. Pistachio Comm'n* (9th Cir. 2007) 491 F.3d 1003, 1011-1012.) Moreover, the Secretary has the power to reverse any Commission action upon an appeal by a person aggrieved by such action. (§ 65650.5.)

The *Delano Farms* court concluded that, while there are differences in the statutorily-prescribed oversight afforded to the government with respect to the Commission and the beef program, these differences are legally insufficient to justify invalidating the Ketchum Act on First Amendment grounds. (*Delano Farms, supra,* 586 F.3d at p. 1230.) In other words, under the *Johanns* analysis, the state exercises effective control over the Commission's activities such that "the Commission's message is 'from

beginning to end' that of the State. [Citations.]" (*Delano Farms, supra,* at pp. 1227-1228.)

While California courts are not bound by decisions of the lower federal courts, they are persuasive and entitled to great weight. (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 58.) We find *Delano Farms* persuasive and will follow it in this case. The detailed parameters and requirements imposed by the Legislature on the Commission and its messaging, the Secretary's power to appoint and remove Commission members, and the Secretary's authority to review the Commission's messages and to reverse Commission actions, lead us to conclude, based on the statutory scheme, that the Commission's promotional activities are effectively controlled by the state and therefore are government speech.

As discussed above, the *Johanns* reasoning applies to free speech issues arising under the California Constitution. Therefore, the Commission's promotional activities, being immune to challenge under the First Amendment pursuant to *Johanns*, are also immune to challenge under the California Constitution. Accordingly, the Commission is entitled to summary judgment on the ground that its message is effectively controlled by the state. In light of this conclusion, we need not decide whether the Commission is a government entity or whether the Ketchum Act survives intermediate scrutiny under *Gerawan II.*

**5.      *Summary judgment was proper on appellants' liberty and due process claims.***

Appellants contend the trial court erred in granting summary judgment on their liberty and due process causes of action arising from their claim that the Ketchum Act exceeds the state's police power. According to appellants, intermediate scrutiny, not rational basis, was the proper standard of review. Appellants further assert that there are disputed issues of material fact regarding this issue.

"Whether a law is a constitutional exercise of the police power is a judicial question." (*Massingill v. Department of Food & Agriculture* (2002) 102 Cal.App.4th

498, 504 (*Massingill*).)   A law is presumed to be a valid exercise of police power and may not be condemned as improper if any rational ground exists for its enactment.  (*In re Petersen* (1958) 51 Cal.2d 177, 182.)

The party challenging the law has the burden of establishing that it does not reasonably relate to a legitimate government concern.  (*Massingill, supra,* 102 Cal.App.4th at p. 504.)  Therefore, to prevail, that party must demonstrate that the law is manifestly unreasonable, arbitrary or capricious, and has no real or substantial relation to the public health, safety, morals or general welfare.  (*Ibid.*)

In enacting the Ketchum Act, the Legislature declared that "the production and marketing" of California table grapes was "affected with a public interest" and that the Ketchum Act was "enacted in the exercise of the police power of this state for the purpose of protecting the health, peace, safety and general welfare of the people of this state."  (§ 65500, subd. (h).)  The Legislature has found, and indeed it is beyond dispute, that agriculture is the state's most vital industry and is integral to its economy.  (§ 63901; *Hess Collection Winery v. Agricultural Labor Relations Bd.* (2006) 140 Cal.App.4th 1584, 1603.)

An act promoting table grapes, one of the major crops produced in California, for the purpose of protecting and enhancing the reputation of California table grapes is reasonably related to the goal of protecting the state's general welfare.  Appellants have not demonstrated otherwise.  They have not shown that the Ketchum Act is unreasonable, arbitrary or capricious and does not reasonably relate to the legitimate government concern of promoting and protecting California agriculture.  Rather, appellants incorrectly argue that this particular exercise of police power requires a more stringent review.  Appellants also erroneously attempt to place the burden on the Commission to demonstrate that that the Ketchum Act remains a valid exercise of the state's police power.

15.

Since appellants did not meet their burden, the trial court properly granted summary judgment on their police power violation claims.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondent.

_____
LEVY, Acting P. J.

WE CONCUR


_____
KANE, J.


_____
PEÑA, J.